508 A.2d 1263

**Leon D. TOURVILLE, Appellant**

v.

**INTER-OCEAN INSURANCE COMPANY and James Colwell.**

Superior Court of Pennsylvania.

Argued March 20, 1985.

Filed March 4, 1986.

Reargument Denied May 18, 1986.

54

John T. Tierney, III, Pittsburgh, for appellant.

Alan H. Perer, Pittsburgh, for appellees.

Before BROSKY, ROWLEY and FEENEY, JJ.*

BROSKY, Judge:

This appeal is from summary judgment against plaintiff in a civil suit for wrongful discharge. Appellant contends that there were sufficient factual allegations to go to trial

* Honorable John M. Feeney of the Court of Common Pleas of Allegheny County, Pennsylvania, sat by designation but did not participate in the decision or disposition of this case.

on the issue of wrongful discharge. We disagree and, accordingly, affirm.

## Facts

Appellant was an insurance broker for appellee before he fell ill. During his hospitalization an employee of appellee came to his house and collected his business records; justifying this to his wife with the statement that he was dying. Appellant did not fulfill this prophecy, but returned home. His former clients were then told that by the same employee he had beat his wife, had a nervous breakdown and kept dishonest accounts. He denies his demise, his brutality and the dishonesty attributed to him. The trial court granted summary judgment for appellee based on the legal conclusion that appellant had not alleged a violation of public policy necessary to support a wrongful discharge action.

## Wrongful Discharge

■ The seminal wrongful discharge case in Pennsylvania is *Geary v. U.S. Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Writing for a majority of the Court, Justice Pomeroy announced a cause of action for wrongful discharge for at-will employees. Under *Geary*, one of two circumstances have to be met: the discharge must be made with the specific intent to harm,[1] or it must be contrary to public policy.[2] We agree with the trial court that appellant's pleadings do not support a discharge violative of public policy. It remains to be seen, however, whether those pleadings establish the basis for going on to trial on a theory of discharge motivated by a specific intent to harm.

1. *Geary*, 456 Pa. at 178–9, 319 A.2d at 177–8.
2. *Geary*, 456 Pa. at 181–3, 319 A.2d at 178–80.
   Whether one accepts this two alternative elements design (which *Geary* seems to set out) or follows Judge Spaeth's interpretation that specific intent to harm is merely an example of a public policy violation, *Yaindl v. Ingersoll-Rand Co.*, 281 Pa.Super 560, 573, n. 5, 422 A.2d 611, 618, n. 5 (1980), matters little. In either event, a specific intent to harm discharge supports a wrongful discharge cause of action in Pennsylvania.

*Specific Intent to Harm*

The post-*Geary* development of the law has focused on discharges violative of public policy.[3]  This has also been the national trend.  Left undefined by subsequent cases has been the specific intent to harm type of discharge, which we treat today.  We are not, however, without ample guidance in this definitional endeavour; for *Geary* made it clear that the specific intent to harm type of wrongful discharge was firmly grounded in other types of actions based on malice of long standing in Pennsylvania's common law.  With these sources to guide us, we can identify two ways that a specific intent to harm discharge can be successfully alleged.[4]

## *"Disinterested Malevolence"*

■  *Geary* gave the specific intent to harm type of wrongful discharge some form by referring to a number of cases.[5]  Principal among these was a case by Justice Holmes, *American Bank & Trust Co. v. Federal Reserve Bank*, 256 U.S. 350, 41 S.Ct. 499, 65 L.Ed. 983 (1921).  Two phrases from that case, quoted in *Geary*, provide the framework we need for our analysis.

■  The first of these phrases is "disinterested malevolence."  By this we take it to mean that there was no proper interest involved in the malevolent act;[6] that there was no

3.  This may, indeed, explain the trial court's attention only to that element.

4.  Of course, it is not sufficient that the term simply be inserted into a pleading; the alleged facts must support it.  But exactly what those facts have to establish is the question before us now.

5.  Initially, it must be recognized, as was done in *Geary*, that the commission of the harmful act of discharging an employee cannot be sufficient to establish, at law, a wrongful discharge.  For in any discharge there will be a foreseeable harm to the employee.  Rather, there must be a *specific* intent to harm the employee.  How are we, then, to judge if that specific intent was present?

6.  See *Cisco v. United Parcel Services, Inc.*, 328 Pa.Super. 300, 308, 476 A.2d 1340, 1344 (1984).  "We have concluded that a plausible and legitimate reason for appellant's discharge existed ..."

reason for the action (other than an atavistic desire to hurt another). This, certainly, is something that the trial court can look for in the pleadings or in the evidence at trial to test the legal sufficiency of a case. If there is not present a cause, which in every day, civilized life would serve as the basis for the action, then the malevolence surely is pure, unadulterated and disinterested.[7]

■ Applying this standard to the instant case, we find that appellant's cause of action fails. Appellee contended that appellant was discharged simply because he had fallen ill and could not perform his duties. Appellant did not gainsay the fact of his illness or of his temporary inability to do his job. This could, without any doubt, provide sufficient reason for an employer to discharge an employee, so that the presence of a malicious desire to harm cannot be inferred from the absence of any reason.[8]

### "Ulterior Purpose"

The other phrase from Holmes' *American Bank* that *Geary* highlighted was "ulterior purpose." This phrase finds definition in another case cited in *Geary, Wheatley v. Baugh*, 25 Pa. 528 (1855), and in the abuse of process cases, the progenitor of which is also cited in *Geary*.[9] The thrust of these cases is that a harmful action is done with sufficient reason (unlike our first type), but it is done with an ulterior motive—to harm the other party. How, then, would a trial court find this to be present? Given a

---

7. A Pennsylvania case involving another malicious cause of action—malicious prosecution—follows just this line of reasoning. "Malice," it says, "may be *inferred* from want of probable cause." *Hugee v. Pa.R.Co.*, 376 Pa. 286, 291, 101 A.2d 740, 743 (1954) (emphasis in original).

8. We do not applaud such a rationale for discharge. In the best of all possible worlds one would, perhaps, see employers willing to wait for an employee's recovery. But the law does not require men to be as good as they might be—and we will not hold an employer to such a standard of decency.

9. *Sommer v. Wilt*, 4 S & R 19 (1818).

sufficiency of plausible justification, how would this reveal itself?

The answer, we think, is rather obvious: that what is harmfully done is beyond the necessity of the justified harmful act. The quality of maliciousness could be discovered by the lack of proportionality or the impropriety or viciousness with which a thing is done. Is that, then, present under the facts as alleged here? Before that can be answered, it must first be determined what facts are relevant.

To this point we have faithfully followed *Geary* and the cases cited by *Geary*. We would continue to do so, but at this juncture they no longer guide us. The central question here is what acts can be looked at to reveal these undesirable qualities. Can we only look to the act of discharge itself; or can we go beyond that to examine the acts committed by the employer before and after the actual discharge?

■ We conclude that the broader scope is the proper one. The actual act of saying to someone, "You're fired." could virtually never, in and of itself, reveal an intent to harm. On the other hand, we do think that the specific intent to harm by firing could, in all fairness, be revealed by the surrounding circumstances.[10]

■ Given that scope, appellant has not alleged sufficient facts to support a wrongful discharge cause of action. See *Farbo v. Caskey*, 272 Pa. 573, 116 A. 543 (1922).

Judgment affirmed.

10. That broader scope must not become too broad. It should be limited to those acts of the employer which occurred shortly before, contemporaneous with, and shortly after the discharge itself.