## Ridolfi v. Harrisburg Hospital

*Ron Turo,* for plaintiff.
*Michael A. Moore,* for defendants.

DOWLING, *J.,* March 15, 1989 — The cause of action for wrongful discharge, unknown at common law, has its Pennsylvania genesis in the seminal

case of *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). The plaintiff in *Geary* believed that a new steel tube product had not been adequately tested, and that it constituted a danger to persons using it. Geary expressed his concerns vigorously to his superiors, including a company vice president, and was fired soon thereafter for making a nuisance of himself. He filed a complaint alleging the company's conduct was wrongful, abusive and malicious, and sought both punitive and compensatory damages.

The trial court sustained the company's preliminary objections in the nature of a demurrer, and the complaint was dismissed. The Superior Court affirmed per curiam and the case reached the Supreme Court. The court recognized that absent a statutory or contractual provision to the contrary, there is a presumption of an at-will employment relationship which can be terminated by either side at any time for any or no reason. The court conceded, however, that an at-will employee may have a cause of action against his employer for wrongful discharge if the firing violates a clear mandate of public policy or was done with specific intent to harm the employee. *Geary* at 180-5, 319 A.2d at 178-80. In the following decade and a half, our courts have narrowly construed these exceptions to the employment-at-will doctrine.

Pending for disposition is defendants' motion for summary judgment in a case involving the discharge of a hospital employee. Defendants contend the firing does not implicate a cognizable public policy, there are no genuine issues of material fact, and thus they are entitled to judgment as a matter of law. Plaintiff counters that there are sufficient factual allegations to proceed to trial on the issue of

whether the pulmonary function test was a medical procedure requiring a physician's order.

Edward G. Ridolfi was employed as a pulmonary function technician by defendant, Harrisburg Hospital. Individual defendants, David Wilson and Stephen Geeseman, were the administrative director and clinical supervisor, respectively, at the hospital. On May 2, 1985, Ridolfi received a request from his supervisor, defendant Geeseman, to perform a pulmonary function test[1] on a heart patient. Noting that there was no written order from a physician, plaintiff refused. A verbal authorization was subsequently obtained from a doctor and Ridolfi then performed the test. Six days after this incident, Ridolfi was notified by defendant Wilson that he was being discharged.

Plaintiff filed suit seeking reinstatement to his former position, as well as compensable and punitive damages. The complaint contains three counts which advance separate causes of action for wrongful discharge, breach of contract, and intentional infliction of emotional distress. Defendants filed preliminary objections and count III (intentional infliction of emotional distress) was stricken from the complaint. At oral argument and in his brief, plaintiff has abandoned the breach of contract claim[2] and has conceded that the hospi-

---

1. A test to assess the efficacy of the function of the lungs. There are two group of tests. One group assesses the mechanical aspect of lung function, i.e., the ability of the chest wall, the diaphragm, and the airways of the lung to move the air and distribute it to the alveoli of the lung (the tiny sacs where the exchange of oxygen and carbon dioxide takes place). The other group of tests assesses the efficacy of the alveoli to perform their function. *Schmidt, Attorneys' Dictionary of Medicine,* Vol. 3, at P-378 (Matthew Bender 1988).

2. The gravamen of the breach of contract claim was that defendants violated the provisions of the employee manual by failing

tal's unilateral act of publishing and promulgating an employee manual does not create any contractual rights nor does it negate the employment-at-will presumption.

The lone remaining count of the complaint alleged that "defendants wrongfully, willfully, maliciously, intentionally and in bad faith discharged plaintiff . . . solely because he failed to follow a supervisor's order which order was in direct violation of hospital policy, state law and sound medical procedure." Plaintiff maintains that his dismissal constitutes a clear violation of the public policy of the Commonwealth of Pennsylvania as articulated in a health care regulation, 28 Pa. Code § 107.61. Finally, the wrongful discharge count also contains a bald assertion that defendants acted with a specific intent to harm plaintiff by terminating his employment.

The standard governing the grant or denial of a motion for summary judgment is well established. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. . . . It is basic that summary judgment may be entered only in a case that is clear and free from doubt." *Rossi v. Pennsylvania State University*, 340 Pa. Super. 39, 44-5, 489 A.2d 828, 831 (1985); Pa.R.C.P. 1035(b). The function of the court is not to decide issues of fact, but only to determine whether any such issues exist. The court must examine the record in the light most favorable to the non-moving party and all

to investigate the incident prior to terminating his employment and that they breached an implied covenant of good faith and fair dealing.

doubts as to the existence of a genuine issue of material fact must also be so resolved.

Applying these standards, plaintiff has pled that he reasonably believed the pulmonary function test was a medical procedure which should be administered only upon the written order of a physician. Plaintiff cites 28 Pa. Code §107.61[3] to substantiate his contention that a genuine issue of material fact exists on whether the test requires prior authorization from a doctor. The code requires a written and signed order from a practitioner prior to the administration of medication or treatment, and a diagnostic procedure such as a pulmonary function test does not fall within the purview of either of these categories.

In his deposition, Ridolfi explained in laymen's terms what the test entails:

Q: All right. Tell me a little bit about pulmonary function test. You are a therapist. Let's assume I know nothing about it. Explain it to me as a total layman.

A: Generally what it does is determines disease of the lung, airway damage, if there is any airway damage present, to the extent of the damage. And physician seeing — you can get it pictorially, usually through a computer. That's what I did at the hospital. And the physician sees the results and prescribes the proper treatment.

___

3. "Medication or treatment shall be administered only upon written and signed orders of a practitioner acting within the scope of his license and qualified according to medical staff bylaws and section 107.12(k) (relating to content of bylaws, rules, and regulations) except as provided in section 107.62 (relating to oral orders), section 107.64 (relating to administration of drugs), and section 107.65 (relating to automatic stop drug orders). The date that the order was written shall be included on all written orders."

Q: Does the patient blow into some sort of machine?

A: Correct.

Q: How do you do the test, in other words?

A: Well, the patient is usually sitting, and on the simple spirometry, the patient would take a deep breath maximally and blow out as forcefully as possible.

Q: In other words, you would say take as big a breath [as] you could and blow as hard as you can?

A: And as fast as you can.

Q: Into the machine?

A: Until all the air in your lungs is empty.

Earlier in his deposition, plaintiff unequivocally denied that a pulmonary function test constitutes a medical treatment:

Q: Now, in your complaint, you state that pulmonary function test is medical treatment. Would you define medical treatment? What is your definition?

. . .

A: Medical treatment — what I in my own words — I would say medical treatment is treatment that is designated or given by a physician to a patient who is ill.

. . .

A: I never said that a pulmonary function test is a medical treatment. It defines disease, if there is disease in the lungs. That is what I was indicating.

Q: So let's just make sure. That makes sense to me, it defines disease. Paragraph eight said pulmonary function tests constitute medical treatment. See that?

A: Yes.

Q: So you are saying that is really not correct?

A: Right.

Q: You were saying a pulmonary function test . . .

A: Does not constitute medical treatment.

Q: It does not?

A: No.

Any lingering doubt on this question was resolved by the affidavit of James B. Henry, a senior vice president of Harrisburg Hospital. Mr. Henry stated that the pulmonary function test itself does not constitute medical treatment and the hospital has no policy or protocol requiring written authorization from a practitioner prior to administering it. Clearly, plaintiff has not established a triable question of fact which would preclude summary judgment in favor of defendants.

The next inquiry is whether defendants are entitled to summary judgment on the wrongful discharge claim as a matter of law. *Geary* and its progeny have carved a very narrow public policy exception to the employment-at-will doctrine. To establish a cause of action for wrongful discharge, the employee must demonstrate that his termination violated a clearly mandated public policy which strikes at the heart of a citizen's social rights, duties, and responsibilities. *Paul v. Lankenau Hospital,* 375 Pa. Super. 1, 543 A.2d 1148 (1988); *Turner v. Letterkenny Federal Credit Union,* 351 Pa. Super. 51, 505 A.2d 259 (1985). It is also generally accepted that to be actionable, the asserted public policy must be one which is already articulated in law or a constitutional provision. *Scott v. Extracorporeal Inc.,* 376 Pa. Super. 109, 545 A.2d 334 (1988).

While a litany of suits have been filed by disgruntled former employees, our courts have exercised remarkable restraint in the application of the public policy exception. See *Paul v. Lankenau Hospital,* 375 Pa. Super. 1, 543 A.2d 1148 (1988) (employee

discharged for theft); *Marsh v. Boyle,* 366 Pa. Super. 1, 530 A.2d 491 (1987) (employee claimed employer acted in arbitrary, capricious and abusive manner); *Betts v. Stroehmann Brothers,* 355 Pa. Super. 195, 512 A.2d 1280 (1986) (no public policy protecting employees who have performed their duties properly from discharge); *Gillespie v. St. Joseph's University,* 355 Pa. Super. 362, 513 A.2d 471 (1986) (employee alleged he was falsely accused of criminal conduct and then discharged); *McCartney v. Meadowville Manor Inc.,* 353 Pa. Super. 34, 508 A.2d 1254 (1986) (employee discharged for applying for a license to run a competing facility); *Tourville v. Inter-Ocean Insurance Co.,* 353 Pa. Super. 53, 508 A.2d 1263 (1986) (discharge of employee because he was unable to perform his job due to illness); *Rossi v. Pennsylvania State University,* 340 Pa. Super. 39, 489 A.2d 836 (1985) (employee alleged that he was fired for suggesting to his superiors ways in which tax money could be saved by better management and use of facilities); *Yaindl v. Ingersoll-Rand Co.,* 281 Pa. Super. 560, 422 A.2d 611 (1980) (employee discharged for questioning safety of products and protesting their use). In all of these cases, the court determined that a cognizable public policy was not violated and denied recovery for wrongful discharge.

There are at least two instances, however, where the Superior Court has entertained actions for wrongful discharge. In *Hunter v. Port Authority of Allegheny County,* 277 Pa. Super. 4, 419 A.2d 631 (1980), the court recognized there was an established policy against stigmatizing former offenders and held that an employee convicted of assault but pardoned by the governor had made out a cause of action for wrongful discharge even though he was an at-will employee. In *Reuther v. Fowler & Williams*

*Inc.,* 255 Pa. Super. 28, 386 A.2d 119 (1978), the court ruled that a discharge motivated by an employee's service of jury duty contravened the strong public policy of promoting the responsibility of performing jury duty.

In the instant case, plaintiff alleges that his dismissal violates the public policy of protecting the safety of patients at medical facilities by requiring prior written authorization from a practitioner before performing medical procedures. Assuming, arguendo, that 28 Pa. Code §107.61 is applicable to the administration of a pulmonary function test, these health regulations are insufficient as a matter of law to constitute a clearly mandated public policy which strikes at the heart of a citizen's social rights, duties, and responsibilities. *Paul, supra.* Even if we accept plaintiff's alternative contention that sound medical procedures and hospital protocol required a doctor's order before performing this test, Mr. Ridolfi is still not entitled to relief under the public policy exception.

Regardless of the praiseworthiness of plaintiff's motives in refusing to perform the diagnostic test, he was an employee at-will and subject to termination at any time for a good reason, a bad reason or no reason at all. Much like Mr. Geary before him, Ridolfi has failed to establish a cause of action against his employer.

Plaintiff's complaint also contains a bald assertion that the hospital acted with a specific intent to harm Ridolfi by terminating his employment. To recover under the specific intent to harm exception the employee must allege specific facts which demonstrate that the discharge was motivated by either an ulterior purpose or was made with disinterested malevolence. *Geary* at 179, 319 A.2d at 178. A mere recitation that

defendant acted "intentionally, wrongfully, maliciously, fraudulently, deceitfully and without justification" does not set forth sufficient allegations of fact to satisfy the specific intent to harm requirement. *Paul, supra.*

The Superior Court has defined "disinterested malevolence" to mean that there was "no proper interest involved in the firing; that there was no reason for the action (other than an atavistic desire to hurt another)." *Tourville v. Inter-Ocean Insurance Co.,* 353 Pa. Super. 53, 56-7, 508 A.2d 1263, 1265 (1986). In *Tourville,* the Superior Court affirmed the grant of summary judgment against an employee finding that a specific intent to harm was not present in a co-worker's statement to the former employee's clients that the employee, who had been ill and hospitalized, beat his wife, had a nervous breakdown and kept dishonest accounts. The allegata of Mr. Ridolfi's action pale by comparison with the facts of *Tourville.*

Plaintiff maintains that the employer's intent to harm him is evident on the face of the pleadings and from his deposition. We have carefully reviewed the pleadings and Mr. Ridolfi's deposition testimony and have concluded there is no genuine issue of material fact which would warrant the submission of this case to a jury. Even when viewed in the light most favorable to plaintiff, the factual allegations of record are insufficient to support a wrongful discharge cause of action under the specific intent to harm exception.

Accordingly, we enter the following

## ORDER

And now, March 15, 1989, defendants' motion for summary judgment is granted.