**John R. TUKESBREY and Diane Tukesbrey, his wife, Plaintiffs,**

v.

**MIDWEST TRANSIT, INC., Defendant.**

**Civ. A. No. 90–959.**

United States District Court, W.D. Pennsylvania.

Feb. 19, 1993.

---

Timothy P. O'Brien, Sikov and Love, Pittsburgh, PA, for plaintiffs.

Clare M. Gallagher, Doepkin, Keevican, Weiss & Medved, Pittsburgh, PA, for defendant.

## OPINION

DIAMOND, Chief Judge.

Defendant, Midwest Transit, Inc., is a corporation which transports the United States Mail to and from various locations within the United States. The corporation's central administrative office is located in Mt. Carmel, Illinois, and its operations office and garage are located in Sumner, Illinois. Plaintiff John R. Tukesbrey is a Pennsylvania resident and an experienced professional truck driver. He was hired by Midwest as an interstate driver on or about January 23, 1989, to drive a route from Washington, Pennsylvania, to Detroit, Michigan. On January 12, 1990, plaintiff enlisted in the Pennsylvania Army National Guard ("Guard"). Shortly thereafter, on or about January 17, 1990, Midwest Transit suspended plaintiff for the stated reason that he did not hold a valid Pennsylvania commercial driver's license. Plaintiff claims he was discharged because of his enlistment in the Guard. The facts will be developed more fully within.

Plaintiff instituted this action against his former employer for violation of the Veteran's Reemployment Rights Act ("VRA"), 38 U.S.C. § 2021 et seq. In separate counts, plaintiff also asserts causes of action for violation of the Pennsylvania Military Affairs Act, 51 Pa.Cons.Stat.Ann. § 7309, wrongful discharge, and intentional infliction of emotional distress. Plaintiff's wife, Diane Tukesbrey, asserts in a separate count derivative causes of action for loss of consortium and intentional infliction of emotional distress.[1] Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1367. Before the court is defendant's motion for summary judgment.

## I.

The Veteran's Reemployment Rights Act contains provisions which prohibit discrimination in employment because of membership in the Armed Forces Reserves.[2] *Monroe v. Standard Oil Co.*, 452 U.S. 549, 557–59, 101 S.Ct. 2510, 2515–16, 69 L.Ed.2d 226 (1981). Plaintiff asserts a cause of action under 38 U.S.C. § 2021(b)(3), which provides:

Any person who seeks or holds a position [in the employ of a private employer] shall not be denied hiring, retention in employment, or any other promotion or incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces.

In addition, § 2024(d) of the Act requires an employer to grant leave upon request to reserve members for active duty or training or inactive duty training and guarantees reemployment at the same seniority, status, and pay. Persons injured by a violation of the foregoing provisions may bring a private action for equitable remedies such as reinstatement and backpay. *See Britt v. Georgia Power Co.*, 677 F.Supp. 1169, 1174 (N.D.Ga. 1987).

In order to recover under § 2021(b)(3), a reservist must show that an adverse employment decision was made based *solely* on his membership in the reserves. *Id.; Clayton v. Blachowske Truck Lines, Inc.*, 640 F.Supp. 172, 174 (D.Minn. 1986), *aff'd*, 815 F.2d 1203 (8th Cir.1987); *Weber v. Logan County Home for the Aged*, 623 F.Supp. 711, 714 (D.N.D.1985), *aff'd*, 804 F.2d 1058 (8th Cir.1986). Plaintiff argues that we should apply the less demanding substantial factor test used in Title VII employment discrimination cases. *See, e.g.,*

---

1. In this opinion, "plaintiff" refers to John R. Tukesbrey. Where necessary the court will refer to Diane Tukesbrey by her name or as "plaintiff's wife."

2. The Pennsylvania Army National Guard is a reserve component of the United States Armed Forces. *See* 38 U.S.C. § 101(27); 10 U.S.C. § 261; 51 Pa.Cons.Stat.Ann. §§ 1101–1102. The formation of the Guard is constitutionally authorized. U.S. Const.Art. I, Sec. 8.

*Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 897 (3d Cir.), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). The Supreme Court, however, stated in *Monroe:*

> The legislative history ... indicates that § 2021(b)(3) was enacted for the significant but limited purpose of protecting the employee-reservist against discriminations like discharge and demotion, motivated *solely* on reserve status.

452 U.S. at 559, 101 S.Ct. at 2516 (emphasis added). Thus, § 2021(b)(3) was "designed to protect reservists or guardsmen from discharge other than for good cause unrelated to their membership." *Fann v. Modlin,* 687 F.Supp. 218, 220 (E.D.N.C.1988). *Accord Burkart v. Post–Browning, Inc.,* 859 F.2d 1245, 1247 (6th Cir.1988). Congress' intent was to place reservists on equal footing with other employees. *Monroe,* 452 U.S. at 559–60, 101 S.Ct. at 2516. This purpose is served by ensuring that employers do not make employment decisions based solely on an employee's military reserve membership.[3] *Clayton,* 640 F.Supp. at 174.

Despite the differing standards, it is appropriate to apply the burden-shifting mechanism developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny for Title VII cases to VRRA cases. *See, e.g., Sawyer v. Swift & Company,* 836 F.2d 1257, 1262 (10th Cir.1988); *Britt,* 677 F.Supp. at 1176; *Weber,* 623 F.Supp. at 714; *Fann,* 677 F.Supp. at 220. The court recognizes that plaintiffs in both types of cases are confronted with the same problem: it is difficult to prove an employer's intent or motivation. *See Chipollini,* 814 F.2d at 897–98; *see also Simmons v. Didario,* 796 F.Supp. 166 (E.D.Pa.1992) (applying burden-shifting mechanism in action brought under 38 U.S.C. § 2021(b)(1)(A)). Thus, the *McDonnell Douglas* device applies to cases of employ-ment discrimination regardless of the statute providing the basis for recovery.

Under *McDonnell Douglas,* an employment discrimination plaintiff bears the initial burden of establishing a prima facie case of employment discrimination. 411 U.S. at 802, 93 S.Ct. at 1824; *Chipollini,* 814 F.2d at 897. A plaintiff may use either direct evidence or circumstantial evidence to establish that the employer's decision was motivated by plaintiff's membership in a protected class. *Chipollini,* 814 F.2d at 897. Once the plaintiff has established a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its employment decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The plaintiff then regains its ultimate burden of proving discrimination: he must prove by a preponderance of the evidence "that the legitimate reasons offered by the defendant were not its true reasons but were a pretext discrimination." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

## II.

The parties raise several matters which must be addressed before the court turns to the substance of defendant's motion for summary judgment. The parties have filed several motions regarding the preclusive and evidentiary effect of an unemployment compensation referee's decision. In addition, defendant has moved to strike an affidavit submitted by plaintiff in opposition to its motion for summary judgment.

### A.

After Midwest Transit suspended him, plaintiff applied for Pennsylvania unemployment compensation benefits. Defendant contested plaintiff's claim on the grounds that plaintiff was discharged for cause. A hearing was held before an unemployment compensation referee ("referee") who decided that plaintiff engaged in no wrongful misconduct[4] and awarded benefits. Defendant did

---

3. In any event, the standard the court applies would not alter the result it reaches. There is sufficient evidence that plaintiff's military status was a significant factor in defendant's decision to lay him off to create a genuine issue of material fact.

4. The referee made the following findings:

FINDING OF FACT NO. 3
Claimant was advised by his supervisor that he need not get a Pennsylvania driver's license immediately because it was anticipated that the requirements for a truck driver's license in Pennsylvania could change in 1990 and that he could wait until that time to obtain such a license.

not appeal the referee's decision. The parties have filed a series of related motions regarding the effect the unemployment compensation proceedings should have in the instant action. Defendant raised the issue first in a motion *in limine* to exclude evidence regarding the unemployment compensation proceeding. Plaintiff responded with a cross motion *in limine* to preclude defendant from relitigating issues decided by the referee. Finally, defendant filed a motion to strike plaintiff's cross motion *in limine*.[5] Because the doctrine of collateral estoppel guides the court's decision on both motions *in limine*, plaintiff's cross-motion must be addressed first.

Plaintiff's cross motion *in limine* invokes the doctrine of collateral estoppel to preclude defendant from relitigating the referee's decision that plaintiff was not guilty of wrongful misconduct. Plaintiff now seeks to use that finding to preclude defendant from presenting in this court evidence to show that plaintiff was terminated for insubordination or for not holding a Pennsylvania license. Collateral estoppel, also known as issue preclusion, prevents a party from relitigating an essential factual issue finally decided in a previous action to which it was a party.

 Federal courts must give facts found in state administrative agency judicial proceedings the same preclusive effect that they would be accorded by the state's own courts. *University of Tennessee v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986). *See also Kelley v. TYK Refractories Co.*, 860 F.2d 1188, 1193 (3d

Cir.1988). In Pennsylvania, a party is precluded from relitigating an issue if:

> 1) the issue decided in the prior adjudication was identical with the one presented in the later action; 2) there was a final judgment on the merits; 3) the party against whom the plea [of collateral estoppel] is asserted was a party or the privity with a party to the prior adjudication; and 4) the party against whom the plea is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Grant v. GAF Corp.*, 415 Pa.Super. 137, 608 A.2d 1047, 1053 (1992) (*citing Safeguard Mutual Insurance Co. v. Williams*, 463 Pa. 567, 345 A.2d 664, 668 (1975)). *See also Township of McCandless v. McCarthy*, 7 Pa. Cmwlth. 611, 300 A.2d 815 (1973). Plaintiff's collateral estoppel argument fails because the issue raised in this action is not identical with that decided in the prior adjudication.[6]

When applying the doctrine of collateral estoppel, Pennsylvania courts have meticulously analyzed the issues raised in both the pending and prior proceedings to determine whether the issues are identical. For example, in *Ogders v. Unemployment Compensation Board of Review*, 514 Pa. 378, 525 A.2d 359 (1987), the court wrote, "[t]he determination of what constitutes a strike for purposes of [the Pennsylvania Public Employe Relations Act] is not coextensive with the determination of whether a work stoppage is a strike or a lock-out under the terms of the Unemployment Compensation Law ...."

---

FINDING OF FACT NO. 5
Immediately upon being notified of the employer's decision, with respect to his driver's license, claimant obtained a learner's permit which was then *validated* by the Pennsylvania State Police as a temporary driver's license until a permanent photo license could be issued at a later time.
Decision of Paul A. Sneed, Pennsylvania Unemployment Compensation Referee, April 27, 1990 (*attached to Plaintiffs' Counter–Statement of Material Facts as Exhibit 85*).

5. Defendant's motion to strike plaintiff's cross-motion *in limine* will be denied for three reasons. First, plaintiff's cross-motion *in limine* was not filed outside the time required by the court's pretrial order, as defendant asserts, because it is responsive to defendant's motion *in limine*. Second, there is no prejudice to the defendant or

delay in process since the issues raised in the cross-motion *in limine* require the court to consider the same matters asserted in defendant's motion *in limine*. See Fed.R.Civ.P. 12(f). Finally, denying defendant's motion to strike encourages resolution on the merits of the action.

6. There can be no dispute that the referee's decision was a final judgment on the merits of the unemployment compensation claim or that the party against whom collateral estoppel is asserted was a party to the prior adjudication. It is open for debate whether an unreviewed employment compensation referee's decision has preclusive effect in state courts. *See, e.g., Grant v. GAF Corp.*, 415 Pa.Super. 137, 608 A.2d 1047, 1055–56 (1992). Thus, we do not decide whether defendant had a full and fair opportunity to litigate the issue in question in the prior action.

*Id.* 525 A.2d at 364. In so determining, the court considered it significant that the two statutes "were enacted to promote decidedly different policies...." *Id.* at 363.

The Third Circuit followed *Ogders* in *Kelley v. TYK Refractories Co.,* in which it declined to give preclusive effect in a § 1981 action for race discrimination to fact findings made by an unemployment compensation board of review ("UC Board"). The court of appeals stated, "[w]e are not persuaded that the Pennsylvania Supreme Court would conclude that the issue of discharge before the [UC] Board is identical to the issue of discharge as presented in [plaintiff's] § 1981 claim ...." 860 F.2d at 1194. The court distinguished the policies and rights embodied in the unemployment compensation law and the civil rights statute: the former addresses economic insecurity due to unemployment, while the latter seeks to eradicate unlawful racial discrimination. *Id.* at 1195. Most important, however, the court noted the inadequacy of the unemployment compensation proceeding in addressing whether there was racial discrimination: "the lack of identify of issues is manifest in the absence in the first adjudication ... of any reference to facts relating to the central concern of the second action." *Id.*

Plaintiff argues that two Superior Court cases decided subsequent to *Ogders* and *Kelley* indicate that the Pennsylvania Supreme Court would give preclusive effect to the factual findings of the referee. The court disagrees. In *Frederick v. American Hardware Supply Co.,* 384 Pa.Super. 72, 557 A.2d 779, *appeal denied,* 523 Pa. 636, 565 A.2d 445 (Pa.1989), the court precluded the plaintiffs from relitigating in a wrongful discharge action whether they were discharged for willful misconduct when the unemployment compensation board of review previously had decided that issue adversely to them. Similarly, in *McCullough v. Xerox Corp.,* 399 Pa.Super. 135, 581 A.2d 961, *appeal denied,* 527 Pa. 624, 592 A.2d 45 (1990), the court applied collateral estoppel in a tort action to a worker's compensation appeal board decision that the plaintiff's injury was not related to work. In those cases, the crucial legal and factual issues were the same in both the prior and pending actions. The issue in *Frederick* was whether the plaintiffs were wrongfully dis-

charged. The court's finding that the plaintiffs willfully ignored the employer's procedures was dispositive of both their unemployment compensation claims and their wrongful discharge action. 557 A.2d at 781. Likewise, in *McCullough,* the referee determined for purposes of the worker's compensation claim that the plaintiff's injuries were not caused by exposure to chemicals in the workplace. She could not later assert that they were so caused in a trespass action. 581 A.2d at 965–66. *See also Grant,* 608 A.2d at 1054–55 (giving preclusive effect in a products liability case to worker's compensation referees' findings that plaintiffs did not contract carcinoma from occupational exposure to asbestos-containing products in the workplace).

The cases plaintiff cites are not helpful to his position because the referee's finding that plaintiff was not terminated for willful misconduct is not dispositive of the question of whether he was terminated in violation of the VRRA or the Military Affairs Act. Those statutes require plaintiff to prove that an adverse employment decision was made solely based on his membership in the Guard. As in *Kelley,* the prior adjudication is void of any facts relating to the central concern of the second action. 860 F.2d at 1195. *Accord, Gallo v. John Powell Chevrolet,* 765 F.Supp. 198 (M.D.Pa.1991) (declining to give preclusive effect in a Title VII gender discrimination case to an unemployment compensation board of review decision that the plaintiff was not guilty of willful misconduct). Finally, the policies of the two acts are different. The purpose of the Unemployment Compensation Law is to allay economic insecurity while the purpose of the VRRA and the Military Affairs Act is to protect military reservists from employment discrimination. *Compare TYK Refractories,* 860 F.2d at 1195, *with Monroe v. Standard Oil,* 452 U.S. at 559, 101 S.Ct. at 2516. Accordingly, plaintiff's cross motion *in limine* to preclude relitigation of issues decided by the unemployment compensation referee will be denied. In addition, defendant's motion *in limine* to exclude evidence regarding the unemployment compensation proceeding will be granted because the referee's decision is not relevant under Fed.R.Evid. 401 and 402.

## B.

■ Defendant also has moved to strike an affidavit submitted by plaintiff in opposition to defendant's motion for summary judgment and paragraphs 20 and 21 of plaintiff's counter-statement of material facts which rely on the affidavit. The affidavit in question, appended to plaintiffs' counter-statement of material facts as Exhibit 86, is a transcription of the recorded statement of a Midwest Transit employee. Without going into detail, the affidavit tends to prove that defendant actually did not maintain a policy whereby it suspended drivers who resided in Pennsylvania but did not possess a valid Pennsylvania commercial driver's license. The affidavit was unsworn and uncertified as originally submitted in plaintiff's counter-statement of material facts. After defendant filed its motion to strike, however, plaintiff responded with a copy of the affidavit containing the following declaration:

> I declare that the foregoing statement given to William P. Craver on June 20, 1991, under penalty of perjury, is true and correct.
>
> s/ [affiant's signature]
>
> Dated: 7/23/91

Federal Rule of Civil Procedure 56(e) requires that affidavits and other materials submitted in support or opposition to a motion for summary judgment be sworn or certified. Matters which are not sworn or certified should be stricken. *Bee v. Local 719, United Auto Workers,* 744 F.Supp. 835, 836 (N.D.Ill.1990); *Flair Broadcasting Corp. v. Powers,* 733 F.Supp. 179, 182–83 (S.D.N.Y. 1990). Nonetheless, 28 U.S.C. § 1746 provides that unsworn written declarations which substantially conform to a statutorily prescribed form and are dated and signed by the maker have the same force and effect as sworn declarations. *Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986) ("Affidavits are admissible in summary judgment proceedings if they are made under penalties of perjury . . ."). The form provided in the statute is:

> I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
>
> (signature)

28 U.S.C. § 1746(2). The affiant's subscription in Exhibit 86 substantially conforms to the statutory model and provides adequate assurances of veracity and reliability. Although plaintiff initially submitted an unsworn affidavit which was not accompanied by the required subscription, he cured the defect promptly. Defendant was not prejudiced by the delay and therefore its motion to strike will be denied.[7]

## III.

■ Summary judgment should be granted if there exists no genuine issue of material fact. Fed.R.Civ.P. 56(c). This court must determine whether plaintiff has produced evidence which presents a genuine issue of material fact. *See Chipollini,* 814 F.2d at 896. In doing so, we may not resolve factual disputes or make credibility determinations. *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992). Competing inferences and contradictory facts must be viewed in the light most favorable to the non-moving party. *Chipollini,* 814 F.2d at 900 (*citing Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977)). As discussed in Part I above, the court will apply the *McDonnell Douglas* burden-shifting mechanism to plaintiff's employment discrimination claim.

■ In this instance, viewing the facts in a light most favorable to plaintiff, the direct and circumstantial evidence establishes a prima facie case of discrimination in violation of the VRRA. Plaintiff enlisted in the Guard on Friday, January 12, 1990. The same day, plaintiff contacted his supervisor's wife and told her about his enlistment and requested time off on the following weekend, January 20 and 21, so that he could attend a drill assembly with his unit. On January 14,

---

7. Defendant also contends that the affidavit consists of inadmissible hearsay. Defendant is mistaken, however, because the declaration is the statement of the declarant. Fed.R.Evid. 801. A party need not produce evidence at summary judgment in a form which would be admissible at trial so long as it is reducible to admissible evidence. *Williams v. Borough of West Chester,* 891 F.2d 458, 466 n. 12 (3d Cir.1989).

1990, plaintiff met with Dave Medlin, his supervisor, and renewed his request for leave to attend the drill assembly. Although both men agree that the meeting was heated and confrontational, each blames the other for being unreasonable. At some point during these events, plaintiff contacted his recruiter, Sergeant Robert D. Methven, and explained that he was having difficulty getting time off. On or about January 17, 1990, Medlin informed plaintiff that he was being suspended, ostensibly because he did not have a valid Pennsylvania commercial driver's license.

The fact that defendant's decision to suspend plaintiff came just four or five days after he enlisted in the Guard gives rise to an inference that the decision was motivated by Guard membership. Although the temporal proximity of these events might not be enough alone to establish a prima facie case, other events surrounding plaintiff's enlistment support the inference. It is undisputed that plaintiff told his supervisor's wife almost immediately that he had enlisted. Several days later, plaintiff's supervisor, was confrontational when plaintiff requested that he be given the following weekend off to drill with his unit. In addition, Sergeant Methven submitted an affidavit stating that he contacted Medlin when plaintiff informed Sergeant Methven that he was having problems with his employer. The recruiter's affidavit states that Medlin was not only uncooperative, but hung up on him several times. The recruiter also avers that he contacted defendant's central office in Mt. Carmel, Illinois several times to discuss the situation but his phone calls were never returned. From these facts, it might appear that Midwest Transit was unhappy with plaintiff for joining the Guard because of the scheduling demands he would make. Thus, plaintiff has established a prima facie case that defendant suspended him solely because of his Guard membership.

Defendant, however, has also met its burden; it has articulated legitimate business reasons which, if believed, would justify plaintiff's suspension. First, defendant asserts that plaintiff was insubordinate and argumentative when he requested a schedule change. Midwest has presented affidavits of other drivers who were present at the meeting on January 14 and would testify that it was plaintiff and not Medlin who was unreasonable and that plaintiff "acted up." Second and more importantly, defendant asserts that plaintiff was suspended because he did not have a valid Pennsylvania commercial driver's license. Defendant contends that at all times relevant, including during the entire term of plaintiff's employment, it had a policy that its truck drivers hold a valid commercial driver's license for the state in which they reside and that those who did not would be suspended.

Defendant asserts that plaintiff's suspension had its genesis in a traffic accident involving another Midwest driver. In late December, 1989, a Midwest driver was involved in an accident in western Pennsylvania. Because the driver did not have a valid license, the state police impounded the truck, the mail was delayed, and consequently, the Postmaster General issued a warning to Midwest Transit. As a result, defendant allegedly engaged in a methodical, computerized review of all of its drivers' files to ensure that they had valid licenses for the states in which they lived. It was during this review that Midwest discovered plaintiff had a Kentucky driver's license, though he lived in Pennsylvania. Accordingly, defendant's vice president of operations, Hal D. Hicks, sent a letter to Medlin, dated January 16, 1990, instructing him to suspend plaintiff until he obtained a valid license.[8] Medlin suspended plaintiff the next day. Although defendant acknowledges that the timing of plaintiff's

---

8. Hicks' letter reads in full:
 January 16, 1990
 Dave Medlin:
 Re: John Tukesbrey
 It has come to our attention, as we have been reviewing our files that this individual is not licensed with a Commercial driver's license to operate a motor vehicle from the state of PA. We have noticed that he uses PA as a current address and that has been his home for more than one year. We are at a loss to understand

why he is using a KY driver's license. Until this is cleared up, we are asking you to lay-off Mr. Tukesbrey so that we may get his file updated. Upon request for re-employment, his file then would be subject to review.
Thank you for your cooperation.
s/ Hal D. Hicks
Letter of Hal D. Hicks, January 16, 1990 (attached to Defendant's Brief in Support of its Motion for Summary Judgment as Exhibit B).

lay-off is suspect, it asserts that it is purely coincidental. The reasons given are sufficiently non-discriminatory to shift the burden back to plaintiff to prove that they are pretextual.

Although plaintiff regains the ultimate burden of proving that defendant acted with discriminatory intent, defendant, as the moving party, retains the burden of showing that no genuine issue of material fact exists. "[T]o meet its burden on summary judgment, the defendant employer must show that the plaintiff will be unable to introduce either direct or indirect evidence of a purpose to discriminate, or indirect evidence of that purpose by showing that the proffered reason [for the employment decision] is subject to factual dispute." *Chipollini*, 814 F.2d at 899. In other words, a plaintiff raises a genuine issue of material fact if he points to evidence which calls defendant's legitimate business reasons into question. *Id.*

Plaintiff has raised a genuine issue of material fact as to whether his alleged insubordination was the reason for his suspension. First, there is some dispute as to whether plaintiff was insubordinate at all. Plaintiff testified at his deposition that it was Medlin and not plaintiff who was confrontational and unreasonable. In addition, the character of the alleged insubordination itself might appear pretextual on its face. Plaintiff was not accused of any type of egregious malfeasance; rather, there was a heated exchange between plaintiff and Medlin. Considering plaintiff's otherwise exemplary record, insubordination of such a mild nature would not seem to justify discharge.

With regard to defendant's more substantial claim that plaintiff was discharged because he did not hold a valid driver's license, there are several indications that it is pretextual. First, plaintiff asserts that he was told when he was hired that he did not need to get a Pennsylvania license because of the impending implementation of a federal licensing system for commercial drivers. He allegedly was told that his Kentucky license would suffice in the interim. Indeed, evidence exists that Midwest was aware throughout his employment that plaintiff did not have a Pennsylvania driver's license. In addition, upon being informed that a problem existed with his license, plaintiff immediately obtained a Pennsylvania learner's permit which was validated by the State Police. There is some dispute as to whether a validated learner's permit is equivalent to a license. Second, plaintiff also is prepared to attempt to prove that Midwest had no policy requiring the suspension of drivers without current valid licenses. Apparently, as early as October defendant was aware that the driver who had the accident in December, 1989, had allowed his Pennsylvania license to lapse. There also is an affidavit of another Midwest employee hired on January 15, 1990, who states that he was permitted to work as a driver for defendant though he had only a Pennsylvania learner's permit. Third, plaintiff asserts that the alleged review of drivers' files was pretextual. It is notable in this regard that the driver involved in the December accident had allowed his license to expire and had no license at all. It was not a matter of his having an out-of-state license, as it was with plaintiff. Finally, plaintiff has produced an affidavit tending to prove that other Guard members also had difficulties taking time off from Midwest to attend drill assemblies.

When considering a defendant's summary judgment motion, a district court should consider whether a plaintiff's proffered "evidence of inconsistencies and implausibilities in the employer's proffered reasons for discharge *could* support an inference that the employer did not act for non-discriminatory reasons . . . ." *Chipollini*, 814 F.2d at 900. It is virtually impossible to separate the evidence regarding defendant's licensing theory and plaintiff's evidence regarding his request for time off. From the record, it is not clear which matter sparked which, or if they were related at all. The foregoing evidence, in combination with the suspect timing of plaintiff's suspension and the combativeness with which Medlin met plaintiff's request for leave to attend the drill assembly, raises a genuine issue of material fact as to whether defendant suspended plaintiff solely because of his Guard membership. Accordingly, summary judgment will be denied on plaintiff's VRRA claim.[9]

9. Count II of plaintiff's complaint asserts a cause of action under the Pennsylvania Military Affairs

## IV.

Plaintiff also asserts, in Count III of his complaint, a common law cause of action for wrongful discharge. In *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974), the Pennsylvania Supreme Court declined to adopt a non-statutory cause of action for wrongful termination in violation of public policy. The court stated in dicta, however:

It may be granted that there are areas of employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened.

*Id.* 319 A.2d at 180. Relying on this statement, the Superior Court has indicated that a cause of action does exist in Pennsylvania for wrongful discharge if an employee is discharged with a specific intent to harm him or in violation of a statutory or constitutional public policy. *See, e.g., Tourville v. Inter-Ocean Insurance Co.*, 353 Pa.Super. 53, 508 A.2d 1263, 1265 (1986).

Courts have determined that performing jury service, *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978), and exercising one's First Amendment rights, *Novosel v. Nationwide Insurance Co.*, 721 F.2d 894 (3d Cir.1983), are activities which are protected by public policy and should not result in discharge from employment. Maintaining the readiness and efficiency of our National Guard and ensuring the job security of its members is an important public policy canonized in statutory and constitutional provisions. *See, e.g.*, 51 Pa. Cons.Stat. § 1101 *et seq.* and § 7301 *et seq.* Defendant has asserted that it had a legitimate business reason for suspending plaintiff. Although defendant's assertion if true could be a defense to a wrongful discharge claim, as discussed above defendant's assert-ed reasons have been called into doubt by plaintiff's proffered evidence. Thus, a genuine issue of material fact exists as to whether plaintiff was wrongfully discharged. Summary judgment will be denied as to Count III of plaintiff's complaint.

Plaintiff's fourth count asserts a cause of action for intentional infliction of emotional distress and demands compensatory and punitive damages. "The gravamen of the tort of intentional infliction of emotional distress is outrageous conduct on the part of the tortfeasor." *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988, 991 (1987). Wrongful discharge from employment typically does not rise to the level of outrageousness required to support a claim for emotional distress. *Rinehimer v. Luzerne County Community College*, 372 Pa.Super. 480, 539 A.2d 1298, 1305, *appeal denied*, 521 Pa. 606, 555 A.2d 116 (1988); *Paul v. Lankenau Hospital*, 375 Pa.Super. 1, 543 A.2d 1148, 1158–59 (1991), *reversed on other grounds*, 524 Pa. 90, 569 A.2d 346 (1990). *Compare Bowersox v. P.H. Glatfelter Co.*, 677 F.Supp. 307, 311–12 (M.D.Pa.1988) (holding that sexual harassment by employer could be type of outrageous conduct which would support claim). Furthermore, plaintiff has not proffered, as required, any competent medical evidence to support his allegations of emotional distress. *Williams v. Guzzardi*, 875 F.2d 46, 51 (3d Cir.1989); *Kazatsky*, 527 A.2d at 995; *Abadie v. Riddle Memorial Hospital*, 589 A.2d 1143, 1146 (Pa.Super.1991). Plaintiff's testimony that he was irritable, unable to sleep, and had marital problems after his suspension is insufficient evidence of injury to support recovery for intentional infliction of emotional distress. Accordingly, defendant's motion for summary judgment will be granted with re-

Act, 51 Pa.Cons.Stat.Ann. § 7309, which makes it unlawful for a private employer to discriminate against a member of the Pennsylvania National Guard with respect to compensation, hire, tenure, terms, conditions or privileges of employment because of such membership. Although there are no reported cases which have interpreted this provision, the legislature indicated its intent that the provisions of title 51 be construed

"in conformity with all acts and regulations of the United States affecting the same subjects...." 51 Pa.Cons.Stat.Ann. § 103. *See Witter v. Pennsylvania National Guard*, 462 F.Supp. 299 (E.D.Pa.1979). The latter provision requires that the court apply the same standard to plaintiff's VRRA claim in Count I and his Military Affairs Act claim in Count II. Accord-

gard to Count IV of plaintiff's complaint.[10]

An appropriate order will follow.

## ORDER OF COURT

AND NOW, this 19th day of February, 1993, for the reasons stated in the opinion filed this day, IT IS ORDERED that:

1) Defendant's motion *in limine* to exclude evidence regarding the proceeding before and determination of the Commonwealth of Pennsylvania unemployment compensation referee (Document No. 12) be, and the same hereby is, GRANTED;

2) Defendant's motion to strike plaintiffs' cross motion *in limine* (Document No. 21) be, and the same hereby is, DENIED;

3) Plaintiffs' cross motion *in limine* to preclude the defendant from relitigating issues raised by it, litigated and decided in favor of the plaintiffs by the Commonwealth of Pennsylvania unemployment compensation referee (Document No. 18) be, and the same hereby is, DENIED;

4) Defendant's motion to strike Exhibit 86 and related paragraphs of plaintiffs' counter statement of material facts (Document No. 23) be, and the same hereby is, DENIED;

5) Defendant's motion for summary judgment (Document No. 15) be, and the same hereby is:

(a) DENIED as to Counts I through III,

(b) GRANTED as to Count IV, and

(c) As to Count V, GRANTED insofar as it asserts a cause of action for intentional infliction of emotional distress and DENIED insofar as it asserts a cause of action for loss of consortium; and,

6) Defendant's motion *in limine* to exclude evidence relating to plaintiffs' in-

tentional infliction of emotional distress claims (Document No. 13) be, and the same hereby is, GRANTED except insofar as such evidence is relevant to plaintiff Diane Tukesbrey's claim for loss of consortium.

ingly, defendant's motion for summary judgment on Count II will be denied.

10. Count V of the complaint consists of a claim by plaintiff Diane Tukesbrey for intentional infliction of emotional distress and loss of consortium. The court has jurisdiction over this claim pursuant to 28 U.S.C. § 1367. Summary judgment will be denied as to Diane Tukesbrey's loss of consortium claim because it is derivative of her husband's claims. *See Tiernan v. Devoe,* 923

F.2d 1024, 1036 (3d Cir. 1991). Summary judgment will be granted with regard to Diane Tukesbrey's complaint insofar as it asserts a cause of action for intentional infliction of emotional distress for the reasons set forth in the text. Finally, defendant's motion *in limine* to exclude evidence relating to both plaintiffs' claims for intentional infliction of emotional distress will be granted except insofar as that evidence is necessary to proof of Mrs. Tukesbrey's claim for loss of consortium.