Nicholas J. MICALONE, Plaintiff,

v.

LONG ISLAND RAILROAD COMPANY, Defendant.

No. 82 Civ. 6063 (HFW).

United States District Court, S.D. New York.

Dec. 1, 1983.

William H. Frappollo, New York City, for plaintiff.

Thomas M. Taranto, Jamaica, N.Y., for defendant; Edward G. Lukoski, Jamaica, N.Y., of counsel.

## OPINION

WERKER, District Judge.

This action arises under the Veteran's Reemployment Rights Act, 38 U.S.C. § 2021–2026 ("the Act"). Plaintiff, Nicholas J. Micalone, seeks reinstatement and compensation for loss of wages and benefits incurred by reason of defendant's alleged unlawful termination of plaintiff's employment as a training specialist. Plaintiff is a resident of Bronx County. Defendant Long Island Railroad Company ("LIRR") is a subsidiary of the Metropolitan Transportation Agency and is a Public Authority of the State of New York. The matter was tried before the court on November 15 and November 16, 1983. The following are the court's findings of fact and conclusions of law.

## FACTS

Plaintiff Nicholas J. Micalone was employed by LIRR on August 18, 1976 as a training specialist with an annual salary of $17,279.08. After his probationary period had ended, plaintiff's annual salary was $20,642.44 or $56.55 a day. JX–H. As a training specialist with the LIRR, Mr. Micalone was an instructor of LIRR apprentices. This position entailed teaching the apprentices to become full electricians. Prior to his employment with LIRR, plaintiff held various positions as an engineer and also was a maintenance manager. *See* JX–I. Plaintiff has a Bachelor of Science degree in physics with a mathematics minor and a Masters degree in business administration. JX–I. Throughout his employment with LIRR, plaintiff was a member of the New York National Guard. Plaintiff's position with LIRR was other than temporary within the meaning of the Veterans Reemployment Rights Act, 38 U.S.C. § 2021 *et seq.*

In March of 1978 and after his probationary period with LIRR had ended, plaintiff was asked by his supervisor, John Martens, to postpone his annual July tour with the National Guard. Plaintiff was told that because the LIRR had procured certain contracts, it anticipated heavy hiring during July and August, 1978. Plaintiff's skills would therefore be required by defendant in training the new employees during that period. As a result of this conversation, plaintiff contacted his Company Commander in the New York National Guard, Lieutenant Verga, explained LIRR's position and requested an alternate tour of duty. Lt. Verga approved the request and plaintiff applied for an alternate tour during August, 1978.

Thereafter, the National Guard apparently found itself short on new enlistments and in need of recruiters. Mr. Micalone was given a new position in the reserves as Retention NCO. Lt. Verga then insisted that plaintiff serve his original July tour.

Upon informing the LIRR of his orders to report, plaintiff's immediate supervisor, Phillip Damm, wrote to Lt. Verga asking that plaintiff's tour be postponed in light of the needs of the LIRR. JX–B. The request was denied, JX–C, and plaintiff served his July 8 to July 22, 1978 tour.

Apparently, the National Guard failed to cancel the August tour plaintiff had requested earlier that year because upon returning from his July tour, plaintiff found orders to report to Camp Smith on August 1, 1978. The parties disagree as to what occurred after plaintiff returned from the July tour. According to plaintiff's testimony, he immediately showed the August orders to Phillip Damm who suggested that plaintiff apply for vacation time in order to serve the tour. Plaintiff testified that Mr. Damm subsequently advised him to attempt to cancel the tour because training specialists would be needed during the heavy work period in August. Plaintiff was successful in changing only two days of the tour and testified that Mr. Martens, Manager of Human Resources Development, threatened him with job dismissal if plaintiff did not cancel the tour.

Plaintiff, Mr. Damm, Mr. Miller and Mr. Martens met to discuss plaintiff's request for vacation. According to plaintiff, the discussion centered on his August tour and ended with Mr. Miller stating he would fire plaintiff if the tour was not cancelled. Plaintiff testified that two days later he was directed by Mr. Martens to submit a letter of resignation. Plaintiff submitted the letter to Phillip Damm on August 3, 1978. JX–E.

Testifying for the defendant, both Mr. Miller and Mr. Martens deny ever having threatened to fire plaintiff or having demanded plaintiff's resignation. Each of them testified that the first time they learned of plaintiff's second tour of duty was during the meeting and in the course of their discussion about plaintiff's request for vacation time. Each agree that plaintiff was denied vacation time due to the heavy work load at the LIRR. Mr. Miller testified that plaintiff volunteered for the

second tour and that plaintiff chose not to postpone it.

I find that whether plaintiff was threatened with dismissal is irrelevant to this case. The only significant fact, and one that is not in dispute, is that plaintiff resigned in order to serve his August tour of duty. Plaintiff's letter of resignation specifically states that "I am sending you this note of resignation due to orders for military duty to commence on 4 August 1978." JX–E. The fact that plaintiff received orders dated July 12, 1978 to report for duty on August 1, 1978 convinces me that plaintiff did not volunteer for the August tour in the sense that he could simply choose not to attend the training camp. See JX–D. Plaintiff was required to report and he did.

After serving the August tour, plaintiff testified that he presented himself to the guard at the personnel department at the LIRR on or about August 28, 1978. The guard directed him to the employment office. Plaintiff appeared at the employment office and explained to a woman in the office that he was there to apply for Veterans Reemployment Rights. Plaintiff testified that the woman noted that he appeared and he left. Defendant claims that plaintiff never presented himself for reemployment. Neither Mr. Miller nor Mr. Martens have any personal knowledge that plaintiff ever appeared at the office or requested reinstatement. Mr. Miller testified that if plaintiff had appeared, he would have been notified.

I find that plaintiff did apply to defendant for reemployment. While neither party inquired into the identities of either the guard or the woman at the employment office at trial, plaintiff's testimony is corroborated by evidence that he spoke to Department of Labor officials concerning his rights to reinstatement and filed a complaint with the Department on August 3, 1978; by a letter received by the defendant from the Department of Labor dated August 23 which refers to plaintiff's complaint, JX–F; and, by a memorandum of a phone call dated August 28, 1978 made by

witness Elanor Goldberg of the Department of Labor to defendant's attorney which refers to an offer by the LIRR to "reconsider" plaintiff's reinstatement. JX–K. In light of this, it is apparent that Mr. Miller simply was not told of the communication.

In addition to the above, defendant was contacted by the Department in early 1979 and defendant's counsel responded by letter dated January 31, 1979. George Foraskis interviewed plaintiff on February 27, 1979. Plaintiff's case was then referred to the Department of Labor's Office of Solicitor on June 12, 1979 which in turn referred the matter to the Department of Justice in August of 1979. Plaintiff testified that he contacted Assistant U.S. Attorney Papper, who had been assigned his case, numerous times over the following months. The Assistant United States Attorney who ultimately filed the complaint in this case, Jorge Guttlein, testified that apparently there were communications between plaintiff and Assistant Papper but that the case file did not indicate specific times or dates. Assistant Guttlein filed this action on September 15, 1982.

## CONCLUSIONS OF LAW

Defendant moved for a directed verdict on the ground that plaintiff failed to comply with 38 U.S.C. § 2021(a)(1) since he did not present a certificate of discharge to his employer upon his application for reinstatement after his second tour of duty in August of 1978.[1] The motion was denied from the bench.

Defendant's motion raises two issues. First, whether the requirements of section 2021(a)(1) apply to members of the National Guard and second, even if they do apply, whether a reservist must produce a certificate for the employer as a condition precedent to reinstatement. Initially, it should be noted that defendant did not expressly raise the failure to produce the certificate in his answer nor is there mention of it in the consent pre-trial order filed

by the parties. Nevertheless, defendant's motion was properly denied from the bench since section 2021(a)(1) applies only to returning veterans and, in any case, the serviceman is not required to produce the certificate at his application for reinstatement under the Act.

Section 2021(a)(1) provides for the reinstatement of

any person who is inducted into the Armed Forces of the United States under the Military Selective Service Act ... for training and service, and who leaves a position ... in the employ of any employer in order to perform such training and service, and [who] (1) receives a certificate described in section 9(a) of the Military Selective Service Act (relating to the satisfactory completion of military service), and (2) makes application for reemployment within ninety days after such person is relieved from such training and service.

38 U.S.C. § 2021(a)(1). The Supreme Court has recently distinguished between the protections afforded the returning veteran under section 2021(a) and those afforded the reservist under section 2021(b)(3) and section 2024 of the Act. *Monroe v. Standard Oil Co.*, 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981).

Section 2021(b)(3) provides that "any person who [is employed by a private employer] shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces". 38 U.S.C. § 2021(b)(3). This section protects both Ready Reservists and National Guardsmen. *Monroe v. Standard Oil Co.*, 452 at 552 n. 2, 101 S.Ct. at 2512 n. 2. As for the rights of reservists, Section 2024(d) provides that "employers should make [allowances] to reservists whose duties force them to miss time at work [i.e.,] provide them with a leave of absence". *Id.* 452 U.S. at 564, 101 S.Ct. at 2518. Section 2024(g) requires that the reservist be reemployed after active duty. Thus, while sec-

---

**1.** Defendant cites no authority for this proposition.

tion 2021(a)(1) is analogous to sections 2021(b)(3) and 2024, the provisions of 2021(a)(1) ensure the returning veteran reinstatement and do not apply to the reservist. *Cf. Id.* 452 U.S. at 554–555, 101 S.Ct. at 2513–2514.[2] Accordingly, the LIRR violated section 2021(b)(3) and section 2024 of the Act by refusing to reinstate plaintiff or, at the least, by refusing plaintiff a leave of absence to fulfill his reservist obligations. The fact that plaintiff resigned in order to serve his tour is irrelevant. *Green v. Oktibbeha Co. Hosp.*, 526 F.Supp. 49, 54 (N.D.Miss.1981); *cf. Boston & Maine R.R. v. Hayes*, 160 F.2d 325 (1st Cir.1947); *cf. Loeb v. Kivo*, 169 F.2d 346, 349 (2d Cir.1948) (waiver must be clear and unequivocal abandonment of rights under the Act).[3]

■ Notwithstanding the above, it is not clear that Mr. Micalone was required to present a certificate of discharge even if section 2021(a)(1) applies. I can find no authority that directly addresses the question of whether the presentation of the certificate to the employer at the time of the serviceman's application for reinstatement is a condition precedent to his right to be reinstated. The Act only requires that the serviceman *receive* a certificate. 38 U.S.C. 2021(a)(1). In *Browning v. General Motors Corp.*, 387 F.Supp. 985, 986 (S.D. Ohio 1974), the court found that the returning serviceman was entitled to reinstatement if he *possessed* a satisfactory certificate of service. The serviceman in that case was denied reemployment because his certificate indicated that he had been "undesirably" discharged. In *Brotherhood of Railway and Steamship Clerks*

*v. Railway Express Agency*, 238 F.2d 181, 184 (6th Cir.1956), the court required the serviceman to present a certificate upon application for reemployment. The Sixth Circuit however was construing a collective bargaining agreement which outlined the procedures for reinstatement of a returning veteran. The court reviewed the terms of the collective bargaining agreement in light of the serviceman's "other than honorable" discharge and only addressed the requirements of the statute in dicta. The LIRR does not contend that plaintiff did not satisfactorily complete his tour of duty. In light of the failure of Congress to expressly require the presentation of a certificate to the employer as a condition precedent to reinstatement; the doubtful application of section 2021(a)(1) to reservists; and the Supreme Court's direction that the Act be liberally construed, *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946), such restrictions should not be placed on national guardsmen who seek reinstatement.

■ Defendant also moved for a directed verdict at the close of plaintiff's case on the grounds of laches. The motion was denied from the bench and defendant again raises the issue in its post-trial brief. Defendant argues that plaintiff is not entitled to relief because a delay in filing this action of more than four years is unduly prejudicial and unreasonable. The defense of laches is an affirmative defense and thus, the burden is on defendant to demonstrate to the court that it should exercise its equitable and discretionary authority to bar plaintiff's cause of action. With re-

2. This is supported by section 2024, subsections (c) and (g) of Title 38 which provide that a reservist is entitled to all reemployment rights and benefits if he applies for reemployment within thirty-one days of his release from active duty. 38 U.S.C. § 2024(c), (g). These sections make no mention of the requirement of a certificate of discharge. One reason for this is clear; a reservist is not discharged from the reserves merely upon completion of a tour of duty.

3. Defendant relies on *Sanders v. Chicago RI & PR Co.*, 97 F.Supp. 927 (W.D.Okla.1951) in support of its argument that plaintiff is not entitled

to recover if he voluntarily resigned. *Sanders* however simply does not stand for that proposition. The court, in *Sanders,* clearly stated that the issue it was addressing was "whether a person must actually have been inducted into the military service to be entitled to the benefits of the Act." *Id.* at 929. There is no question that in this case plaintiff was a member of the National Guard who received orders to report in August, 1978 and that as a reservist he is entitled to the benefits of the Act if all its requirements are satisfied.

gard to the application of this doctrine, the Second Circuit has stated:

> The questions to be answered in the exercise of that discretion are whether there existed satisfactory excuse for the delay in bringing the cause of action and whether allowing the action to go forward despite the delay would unfairly prejudice the defendant. These questions must be evaluated in light of the peculiar equitable circumstances of the case.[4]

*Public Admin. of Co. of New York v. Angela Compania Naviera*, 592 F.2d 58, 63–64 (2d Cir.), *cert. dismissed*, 443 U.S. 928, 100 S.Ct. 15, 61 L.Ed.2d 897 (1979). I find that that plaintiff has a satisfactory excuse for his delay and that defendant has failed to demonstrate that the delay was unduly prejudicial.

Defendant argues that it is unduly prejudiced because, by the time plaintiff commenced this action, attorneys Rubin and Prisco, and plaintiff's supervisors Damm and Miller had already left the employ of LIRR and because relevant documents are now unavailable. However, defendant has presented no evidence that these witnesses were unavailable for trial or that attempts were made to locate or subpoena them. In fact, Mr. Miller did testify. Defendant does not suggest what documents could have been discovered that were not already available in the agency files on this case. On the contrary, defendant had access to both the Department of Labor and Department Justice files as plaintiff had subpoenaed them for trial. More importantly, defendant makes no proffer as to the substance or relevancy of the evidence allegedly unavailable to it because of the passage of time.

Furthermore, plaintiff made conscientious efforts to bring this action. The only delay was the delay of the government agencies involved in investigating and attempting to resolve the dispute. Thus, this case does not present the problem faced by the Eighth Circuit in *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800 (8th Cir. 1979), where the Court found that the equities weighed in favor of the company because the company had reasonably relied on a determination by the Department of Labor—later withdrawn—that the company's policy were in full compliance with the law. *Id.* at 807. This court finds that mere delay by the agency is not a sufficient basis to bar plaintiff's cause of action on ground of laches where defendant was well aware of the complaint against it on August 3, 1978 or at least by August 23, 1978 when it was contacted by the Department of Labor. *See Witty v. Louisville & Nashville R.R. Co.*, 342 F.2d 614, 617 (7th Cir.1965); *Ufland v. Buffalo Courier Exp., Inc.*, 394 F.Supp. 199, 201 (W.D.N.Y.1974); *Conseglio v. Penn. R.R. Co.*, 211 F.Supp. 567, 575 (S.D.N.Y.1962).

■■■ Defendant next argues that while plaintiff was obviously qualified to obtain some kind of employment, plaintiff failed to do so and therefore failed to mitigate damages. Plaintiff does have a duty to mitigate damages, *Loeb v. Kivo*, 169 F.2d 346 (2d Cir.1948), however, the burden of proving the failure to use reasonable and diligent efforts to mitigate is on the defendant. *Marshall v. Arlene Knitwear, Inc.*, 454 F.Supp. 715 (E.D.N.Y.1978). Mr. Micalone was self-employed after August 1978. "It is indisputable that self-employment is an adequate and proper way for the injured employee to attempt to mitigate his loss of wages." *Heinrich Motors, Inc. v. NLRB*, 403 F.2d 145, 148 (2d Cir.1968) (review of an NLRB award); *Peel v. Florida Dept. of Transp.*, 500 F.Supp. 526, 528 (N.D.Fla.1980) (action to recover wages under Veterans Reemployment Rights Act). Moreover, the uncontroverted testimony in this case is that plaintiff read newspaper advertisements, mailed out resumes and applied for engineering jobs but that no positions were available in plaintiff's spe-

---

**4.** The application of the doctrine also requires reference to or consideration of the analogous state statute of limitations, *Public Admin. of Co. of New York v. Angela Compania Naviera*, 592 F.2d at 64, however section 2022 of Title 38 expressly provides that a state statute of limitations does not apply to actions under the Veterans Reemployment Rights Act.

cialty. Defendant offered no proof that positions were available or that plaintiff failed to pursue any job opportunities.[5] As a consequence, I find that defendant has not sustained its burden of showing that plaintiff failed to mitigate his damages.

 Plaintiff is entitled to recover back pay less whatever he earned during the period of self employment. From a salary of $20,642.44, plaintiff was paid $13,597.56, JX–G (1978 W–2 Form), leaving a sum of $7044.44 due him for 1978. Plaintiff, however, is not entitled to be paid under the Act for the period he was serving in the reserves. This court finds therefore that plaintiff is not entitled for loss wages from August 4 to the date upon which he was entitled to reinstatement, i.e., upon his application for reemployment on August 28, 1978. Thus, for 1978 plaintiff is entitled to $7044.44 less 24 days pay at $56.55 a day or a sum of $5687.68.[6] Since there is no evidence as to the amount of pay raises plaintiff may have received if he had been employed by the LIRR during 1978–83, the court must assume that plaintiff would have earned a constant salary of $20,642.44 for the years 1979, 1980, 1981 and 1982 or an aggregate sum of $82,569.76. Finally assuming December 1, 1983 as plaintiff's reinstatement date, plaintiff is entitled to $56.55 times 334 days or an additional $18,-887.70. The total back pay award is therefore $107,145.14.

Plaintiff's tax returns indicate that he earned $5230 in 1979, $2686.94 in 1980, $2900 in 1981 and $3716.74 in 1982 or a total of $14,533.68. Plaintiff argues that the amounts earned as a result of his national guard service and for work he did for an assemblyman should not be deducted from his lost wages since he would have earned those wages even if he had worked for defendant. The court is not persuaded. Plaintiff's tax return indicates that plain-tiff worked for the assemblyman during 1979, i.e., the period in which he was self-employed. Plaintiff also testified that in an effort to work he volunteered for additional duty with the national guard. Since the Act was not intended to penalize the employer and in fact the employer is not required to pay the reservist while on active duty, plaintiff's award will be decreased by the amount of his earnings during the 1979 to 1983 period. Thus, plaintiff is entitled to $92,611.46 in back pay.

 Plaintiff is also entitled to vacation pay, pension credits and Retirement Fund payments, however, since plaintiff has offered no evidence as to these amounts, the court can not order such an award. In addition, I decline to award plaintiff pre-judgment interest. The award is discretionary with the court. *Accardi v. Pennsylvania R.R. Co.*, 369 F.2d 805 (2d Cir.1966); *Chernoff v. Pandick Press, Inc.*, 440 F.Supp. 822 (S.D.N.Y.1977). Plaintiff has been made whole by the award of back pay and reinstatement. To award him interest over a period of several years which cannot be attributed to the dilatory tactics or bad faith of the defendant would be to penalize the employer.

Accordingly, this court finds that defendant violated the Veterans Reemployment Rights Act by failing to reinstate plaintiff to his former position. Plaintiff is to be awarded the sum of $92,611.46 for lost wages and is entitled to reinstatement. Plaintiff is directed to submit judgment on notice within ten days (10) from the entry of this order.

SO ORDERED.

---

5. During the course of plaintiff's cross examination, defendant attempted to elicit the names of the employers to whom plaintiff had applied for employment after August, 1978. The court precluded this line of inquiry because defendant waived it by not raising the issue during discovery. Discovery closed on April 1, 1983. Defendant made no application for an extension.

The time for exploring new matters has long since past.

6. The $56.55 figure was derived by dividing plaintiff's annual salary of $20, 642.44 by 365 days. Exhibit JX–H indicates that the daily rate was $56.71 but the court cannot discern how that figure was derived and rejects it as inconsistent with plaintiff's annual salary.