**Elmer M. GRAHAM, Plaintiffs,**

v.

**HALL–McMILLEN COMPANY, INC., Defendants.**

**Civil Action No. 3:94CV116–D–A.**

United States District Court, N.D. Mississippi, Western Division.

May 9, 1996.

Jim M. Greenlee, Assistant United States Attorney, Oxford, Mississippi, Channah S. Broyde, United States Department of Labor, Atlanta, Georgia for Plaintiffs.

William O. Rutledge, III, New Albany, Mississippi, Lester F. Sumners, New Albany, Mississippi, for Defendant.

### BENCH OPINION

DAVIDSON, District Judge.

This matter came to trial before the undersigned on April 8, 1996, in Oxford, Mississippi. The plaintiff, Elmer M. Graham, brought suit against Hall–McMillen Company, Inc. ("Hall–McMillen" or "HMC"), for violations of the Veterans' Reemployment Rights Act ("VRRA"), 38 U.S.C. §§ 2021 *et seq.*[1] The court sets out below its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

---

1. The complaint in this action references the Veterans' Reemployment Rights Act ("VRRA"), codified at 38 U.S.C. §§ 2021–27, as amended. The VRRA was renumbered Chapter 43, §§ 4301–07 by Pub.L. 102–568, Title V, § 506(a), Oct. 29, 1992, 106 Stat. 4340. Section 2021 was transferred without change to § 4301. The VRRA was subsequently amended by the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), codified at 38 U.S.C. §§ 4301–33, effective October 13, 1994. The USERRA generally applies to reemployments initiated on or after a 60–day period after enactment of the Act, October 13, 1994. Pub.L. 103–353, § 8, Oct. 13, 1994, 108 Stat. 3150. The "reemployment" in this case was initiated prior to that time. Therefore, the renumbered VRRA applies. To minimize confusion with the USERRA, the court will use the former numbers in its discussion.

## FACTUAL FINDINGS

Hall–McMillen,[2] founded in 1980, produces machine parts for use by other companies in building a final product. Elmer M. ("Mike") Graham worked for the company as a machinist from its inception until approximately May, 1988. At that time he voluntarily resigned to take a job elsewhere. In October, 1988, Hall–McMillen rehired Graham, and he worked there as a machinist until February 5, 1992.

At trial, the testimony differed as to the circumstances surrounding Graham's rehiring. Apparently, Graham approached Larry Kain, a personal friend with whom he attended church and an HMC employee, and inquired as to whether he could get his job back at HMC.[3] After much prodding by Kain, and upon Graham's promise to leave if requested with no questions asked, David McMillen, HMC's President and General Manager, reluctantly agreed to rehire Graham in October, 1988.[4]

Prior to his rehiring, Graham had joined the Tennessee Air National Guard ("TANG") in 1988. Pursuant to his Guard orders, Graham attended active duty for training with TANG from January 20 to January 24, 1992. Following this training, Graham returned to work on Monday, January 27, 1992. On Friday, January 31, 1992, Larry Kain tendered a check to Graham for the previous week. The check, introduced into evidence as Plaintiff's Exhibit 2, indicates that Graham had been paid vacation pay for the time he missed work due to military training. On the check's stub, under the column marked "Earnings" appear the words "Vacation Hours." Across from "Vacation Hours," the stub indicates that forty (40) hours were debited from Graham with forty-eight (48) remaining for the year.

The crux of this litigation centered on the different interpretations given this check. The defendant presented witnesses who testified that Graham had previously requested vacation pay for the time he would be gone for military duty, and that he did not lose any vacation **time,** only vacation **pay.**[5] According to the defense, HMC has always had a flexible time policy wherein an employee may receive holiday or vacation pay at a different time than when that employee actually takes holiday or vacation time. For instance, an employee could work on a holiday, but elect not to receive holiday pay at that time and then later take a paid leave day. In the plaintiff's situation, the defendant submitted that even though Graham had been paid vacation **pay** for five days, his five days of vacation **time** had not been debited. He could still take the time without pay, since he had already been paid earlier.

On the other hand, Graham testified that he did not request vacation pay for his military time and that HMC tried to make him take "vacation" (meaning vacation time and vacation pay) for his military responsibilities. On January 31, 1992, he protested these actions as being violative of the VRRA and initially refused to accept the check. When David McMillen noticed his protestations on the floor of the machine shop, McMillen called Graham into his office and requested his resignation within two (2) weeks. Both sides presented evidence that Graham refused to resign, saying that HMC would have to fire him. The situation escalated on February 5, 1992, when Graham recorded a conversation he had with Larry Kain at work. After Kain informed McMillen of these actions, McMillen again called Graham into his

---

**2.** There was testimony during trial that indicated the company changed its name to HMC Technologies, Inc., but for purposes of this opinion, the court shall refer to the defendant as Hall–McMillen or HMC.

**3.** At the time of trial, Kain was employed at HMC as the Special Projects Coordinator, but he worked as a Production Supervisor from 1985 to 1991 and as the Manufacturing Manager from 1991 through 1994.

**4.** Testimony indicated that Graham had been a less than exemplary employee during his first stint as an HMC machinist.

**5.** Neither federal nor Mississippi law requires an employer to pay its employees for time off due to military responsibilities and HMC did not have such a policy. *See* Miss.Code Ann. § 33–1–19; Samuel W. Asbury, Comment, *A Survey And Comparative Analysis of State Statutes Entitling Public Employees to Paid Military Leave,* 30 Gonz.L.Rev. 67, 95 (1994).

office and terminated his employment on the spot.

HMC offered several defenses at trial in explanation of its actions as not violating the VRRA. The first, as noted *supra*, hinged on the court's interpretation of the check issued Graham and the circumstances surrounding its issuance—e.g., vacation **pay** versus vacation **time**. The court finds that Graham did not request vacation pay for his military time of January 20 through January 24, 1992. The evidence lends its weight to this finding. First of all, the check itself indicates that forty (40) "Vacation Hours" were subtracted from Graham's schedule following his military duty in January. The court was not persuaded by the defense's argument that "Vacation Hours" meant hours of **pay** only.

In addition, Graham's attendance record of 1992, admitted into evidence as Plaintiff's Exhibit 5, indicates HMC counted his military days off as vacation days. The legend on the attendance record defines that "H" indicates a holiday, "V" indicates vacation, "I" indicates illness, etc. Handwritten in on the legend is that an "M" indicates military leave. The days on the attendance history card for January 20 through January 24, 1992, the time Graham was gone for military training, are marked with a "V" for each day. The defendant failed to produce any credible evidence explaining why a "V" for vacation days would be marked on Graham's **attendance** record other than to indicate vacation days used.

Still further evidence supporting the plaintiff's side of this coin is the taped conversation which took place. between Graham and Larry Kain on February 5, 1992. The tape was admitted into evidence as Plaintiff's Exhibit 4.[6] In discussing the events that transpired the previous Friday, January 31, 1992, the following dialogue took place:

> Kain: ... As far as us ever denying you time to be off to go to Guard, I don't guess we've ever said Mike, no, you can't take

off. The only thing he's asked you to do is take vacation.

\* \* \* \* \* \*

> Kain: Where do you think our company policy is against the law?
> Graham: Well, I, I don't want to debate that.
> Kain: Well, I don't know that I know how to debate it either, I just, I just don't think, I think the only thing the law asks you to do is us to give you time off to serve with the Guard. We have never denied you time off to serve with the Guard. The only thing we have asked you to do is take vacation for this week.
> Graham: No. I have been, I was told that it was not an option. I will take vacation time. Is that not the situation? I don't have a choice.
> Kain: No, I'm not giving you a choice.

Tape, Plaintiff's Exh. 4. The court finds that HMC allowed Graham time off to keep his military obligations upon the condition that he take vacation pay and time for the days he would be absent from work.

As a separate line of defense, HMC offered evidence that it fired Graham for cause in November, 1991, before the situation concerning Graham's military duty arose. When HMC rehired Graham in the fall of 1988, McMillen extracted a promise from Graham that if his employment ever became a problem at the shop, McMillen need only request him to leave and and he would do so without question. This verbal agreement was also evidenced by the taped conversation between Graham and Kain on February 5, 1992.

> Kain: ... But when he asked you if we didn't discuss when you were employed here that if it ever became a problem you working here that you'd leave. Now, that's what he's asked you to do is leave, and then you said, I don't see any reason to. I don't have to.
> Graham: What he said was, all right, I understand that. But the spirit of that agreement was that if I, if I was causing a problem out here in the plant.

**6.** The plaintiff's transcript of that tape was also admitted to supplement the tape and aid the court.

Tape, Plaintiff's Exh. 4. The defense presented evidence that McMillen called for that promise to be kept in November, 1991. Apparently, Graham's less-than-stellar performance as an HMC employee finally culminated in McMillen telling Graham to start looking for another job. Graham disputed at trial as to whether this meeting took place at all, much less that he had been told to look for work elsewhere. However, the evidence adduced at trial overwhelmingly indicated that such a meeting did take place.[7] Even though HMC did tell Graham to find employment elsewhere in November, 1991, that finding is irrelevant in that no time limit was placed on Graham's job search. Graham was not put on notice of his final termination until January 31, 1992, and he was not fired until February 5, 1992.

### CONCLUSIONS OF LAW

**I. VETERANS' REEMPLOYMENT RIGHTS ACT**

Although the specific provisions of the statute at issue in this case are discussed more thoroughly below, the court notes that "[t]he statute is to be liberally construed for the benefit of reservists and guardsmen." *Cole v. Swint,* 961 F.2d 58, 59 (5th Cir.1992) (citing *Coffy v. Republic Steel Corp.,* 447 U.S. 191, 196, 100 S.Ct. 2100, 2104, 65 L.Ed.2d 53 (1980)); *Green v. Oktibbeha County Hosp.,* 526 F.Supp. 49, 53 (N.D.Miss.1981) (same); *Hansen v. Town of Irondequoit,* 896 F.Supp. 110, 114–15 (W.D.N.Y.1995) (same and citing cases). Furthermore, the facts of this case present an issue of first impression in that Graham alleged he was fired in violation of § 2021(b)(3) for protesting a violation of § 2024(d). The court's research indicates that most alleged violations of § 2021(b)(3) concern situations where the plaintiff/reserv-

ist is either discharged due to his anticipatory absence for military duties or not rehired after returning from military leave. *See, e.g., Cole v. Swint,* 961 F.2d 58 (5th Cir.1992) (ranch foreman terminated after requesting Saturday off for training); *Peel v. Florida Dep't of Transp.,* 600 F.2d 1070 (5th Cir. 1979) (employee discharged due to absence from work for training); *Greene v. Advanced Micro Devices, Inc.,* 824 F.Supp. 653 (W.D.Tex.1993) (employee alleged violation when employer failed to reemploy reservist on return from active duty); *Barber v. Gulf Publishing Co.,* 1986 WL 611 (S.D.Miss. Jan. 8, 1986) (employer terminated employment when plaintiff took leave for military duty without employer's permission). The parties cited no similar cases where a reservist was discharged, in essence, as a retaliatory measure for protesting a separate violation.

**A. Breach of § 2024(d) of the VRRA**

■ Part of Graham's claim falls under § 2024 of the VRRA. The relevant portion of the statute provides:

(d) Any employee not covered by subsection (c)[8] of this section who holds a position described in clause (A) or (B)[9] of section 2021(a) shall upon request be granted a leave of absence by such person's employer for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States. Upon such employee's release from a period of such active duty for training or inactive duty training, or upon such employee's discharge from hospitalization incident to that training, such employee shall be permitted to return to such employee's position with such seniority, status, pay, and **vacation** as such employ-

7. Several witnesses testified at trial that during the February 5, 1992, termination meeting, McMillen began the conversation by noting to Graham that he had told him in November to start looking for another job and that Graham responded that he had been searching but had yet to find anything. The court finds that Graham's response affirmed the veracity of McMillen's and Kain's testimony as to this November meeting.

8. Subsection (c) pertains to "[a]ny member of a Reserve component of the Armed Forces of the

United States who is ordered to an initial period of active duty for training of not less than twelve consecutive weeks...." 38 U.S.C. § 2024(c). Graham was not covered by subsection (c) because his leave at issue was not for an initial period of active duty for training of at least twelve (12) consecutive weeks.

9. Graham falls under clause (B) because he was in the employ of a private employer. 38 U.S.C. § 2021(a)(B).

ee would have had if such employee had not been absent for such purposes.

38 U.S.C. § 2024(d) (emphasis added). This court has jurisdiction pursuant to § 2022 of the VRRA which sets out that

If any employer ... fails or refuses to comply with the provisions of section 2021(a), (b)(1), or (b)(3), or 2024 of this title, the district court of the United States for any district in which such private employer maintains a place of business ... shall have the power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, specifically to require such employer to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action.

38 U.S.C. § 2022.[10]

The undersigned is of the opinion that HMC breached § 2024(d) of the VRRA by requiring Graham to utilize his vacation (time **and** pay) for his military leave of absence. Had Graham not been absent from work in order to fulfill his military obligations, he would not have had forty (40) vacation hours knocked off his time at HMC. Thus, after completing his military training in the Guard in January, 1992, Graham did not return to his position as an HMC machinist "with such seniority, status, pay, and **vacation** as [he] would have had if [he] had not been absent for such purposes."

## B. Breach of VRRA § 2021(b)(3)

▌ Graham also alleged in his Complaint and presented evidence at trial that he was

unlawfully terminated from his employment in violation of § 2021(b)(3) of the VRRA. That section of the Act reads:

(3) Any person who seeks or holds a position described in clause (A) or (B) [11] of subsection (a) of this section shall not be denied hiring, retention in employment, or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces.

38 U.S.C. § 2021(b)(3).[12] It is Graham's contention that he was asked to resign and ultimately fired because he balked when HMC cut his vacation in violation of § 2024(d). HMC submits that Graham was actually let go in November, 1991, before the military situation arose. However, as addressed earlier in the factual section, the court is of the opinion that Graham was not fired at that time. HMC argues in the alternative that Graham was dismissed for cause which had nothing to do with his protestations over his military time treatment. The defendant produced ample evidence at trial that Graham was anything but an exemplary employee and the defendant had more than sufficient cause to terminate his employment. However, the court is unconvinced that HMC discharged Graham for cause unrelated to his military duties.

The standard of proof which governs this case is set out in the Uniformed Services Employment and Reemployment Rights Act ("USERRA").[13] Section 4311(b) of USERRA provides:

---

**10.** Section 2022 further sets out that a person aggrieved by a violation of the VRRA may apply to the United States attorney or comparable official, and if such official is reasonably satisfied that the person is entitled to benefits under the act, the official "shall appear and act as attorney for such person." 38 U.S.C. § 2022. In this case, the plaintiff was represented by an Assistant United States Attorney.

**11.** *See supra* note 9.

**12.** It is also the court's opinion that HMC violated § 2021(b)(3) with the issuance of the vacation pay check. By doing so, it denied Graham an "incident or advantage of employment" in that it denied him vacation which it granted to its other

employees not in the military reserves. However, more pertinent to this court's discussion under § 2021(b)(3) is the termination of Graham's employment.

**13.** Although the VRRA governs this case, the USERRA's provision pertaining to proof (38 U.S.C. § 4311(b) (Supp.1996)) remains applicable as the legislative history to § 4311(b) articulates.

This standard and burden of proof is applicable to all causes brought under this section regardless of the date of accrual of the cause of action. To the extent that courts have relied on dicta from the Supreme Court's decision in *Monroe v. Standard Oil Co.*, 452 U.S. 549, 559, 101 S.Ct. 2510, 2516, 69 L.Ed.2d 226 (1981),

**(b)** An employer shall be considered to have denied a person initial employment, reemployment, retention in employment, promotion, or a benefit of employment in violation of this section if the person's membership, application for membership, service, application for , service, or obligation for service in the uniformed services is a **motivating factor** in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(b) (Supp.1996) (emphasis added). As noted *supra,* the defendant presented a plenitude of evidence which would have justified terminating Graham's employment for cause. Graham was a disruptive employee and, to use a term coined by several witnesses, a "troublemaker." He demonstrated insubordination, dishonesty and other deleterious traits. However, the fact that he was a unsatisfactory employee does not answer the question of whether his military service was a factor that motivated HMC to fire him.

The court is of the opinion that Graham's military obligation was a motivating factor in his employment termination. Several courts have held that a VRRA claim of this sort requires reasoning analogous to that implemented in employment discrimination or retaliatory discharge claims under Title VII.[14] *Novak v. Mackintosh & Dakota Indus., Inc.,* 919 F.Supp. 870 (D.S.C. Jan. 30, 1996); *Tukesbrey v. Midwest Transit, Inc.,* 822 F.Supp. 1192, 1194–95 (W.D.Pa.1993) (applying Title VII and its progeny to VRRA claim; "The court recognizes that plaintiffs in both types of cases are confronted with the same prob-

lem: it is difficult to prove an employer's intent or motivation.... Thus, the *McDonnell Douglas* device applies to cases of employment discrimination regardless of the statute providing the basis for recovery."). However, as the district court in Tennessee noted, "[t]here is no need to determine in this case whether the burden of proof should be allocated as it is under Title VII of the Civil Rights Act of 1964 ... or in some other manner. Regardless of who has the burden of proof in this case, it is clear that [the alleged VRRA violation] was not causally related to [the plaintiff's] service in the United States Marine Corps." *Winfree v. Morrison, Inc.,* 762 F.Supp. 1310, 1313 (E.D.Tenn. 1990).

Just as it was clear a violation did not occur in *Winfree,* it is clear in this case that a violation of the VRRA did occur. Although McMillen testified that he had ample justification for terminating Graham's employment, McMillen further stated under oath that Graham's refusal to take the check issued him January 31, 1992, was the "last, last straw." Given that Graham was protesting the check as a violation of the VRRA, which this court has held it was, Graham's military service was a "motivating factor" in his discharge from HMC's employment. As such, HMC violated § 2021(b)(3) when it fired Graham.

## C. Remedies for Breach of VRRA

The plaintiff requested reinstatement and backpay in the amount of $114,446.66, increased by $538.10 per week since April 8, 1996.

### 1. Reinstatement

 In construing a statute, the court first looks to the plain language contained

---

that a violation of this section can occur only if the military obligation is the sole factor, *see Sawyer v. Swift & Co.,* 836 F.2d 1257, 1261 (10th Cir.1988), those decisions have misinterpreted the original legislative intent and history of 38 U.S.C. 2021(b)(3) and are rejected on that basis.

H.Rep. No. 103–65, 103d Cong., 2d Sess. 21 (1993), *reprinted in* 1994 U.S.C.C.A.N. 2449, 2457. *See also Gummo v. Village of Depew, New York,* 75 F.3d 98, 104–07 (2d Cir.1996) (holding after in-depth analysis that motivating factor test should be applied instead of sole-motivation analysis); *Hansen v. Town of Irondequoit,* 896

F.Supp. 110, 114 n: 3 (W.D.N.Y.1995) (noting that "motivated solely by reserve status" *Monroe* standard rejected by USERRA in favor of "motivating factor" test).

**14.** In Title VII cases, the Fifth Circuit employs the three-prong "burden-shifting" analysis set out by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and recently reaffirmed in *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *See Portis v. First Nat'l Bank,* 34 F.3d 325, 328 n. 7 (5th Cir.1994).

therein. *Consumer Prod. Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Id.* Congress, in the section of the Act that deals with persons inducted into the Armed Forces of the United States under the Military Selective Service Act, specifically provided for reemployment of a qualified person to a position of like seniority, status, and pay "unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so." 38 U.S.C. § 2021(a).[15] Congress also extended those same protections to reserve members "ordered to an initial period of active duty for training of not less than twelve consecutive weeks." *Id.* § 2024(c). However, in the section at issue in this case, § 2021(b)(3), Congress did not include the language requiring reinstatement with only the limited exception of impossibility or unreasonableness.

■ This court is of the opinion that Congress did not intend § 2021(b)(3) to require mandatory reinstatement "unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so" since Congress specifically included that language in reference to the above two mentioned groups, yet noticeably did not in § 2021(b)(3). The court is aware of Fifth Circuit authority applying the "changed circumstances" language of § 2021(a)(1)(B) to a violation under § 2021(b)(3). *See Cole v. Swint,* 961 F.2d 58, 59–60 (5th Cir.1992). However, the *Cole* Court affirmed the lower court's decision which awarded the plaintiff only $4800 plus interest and costs—not reinstatement. This court is of the opinion that the Fifth Circuit employed the "changed circumstances" language in that case only to define when a violation occurs, not when reinstatement is mandated under § 2021(b)(3). The employer argued in *Cole* that he was exempted from the VRRA's application because his circumstances had so changed as to make it unreasonable or impossible to reemploy the plaintiff. The Fifth Circuit disagreed, held that hiring a replacement does not change circumstances so as to exempt an employer from the Act, and upheld the finding of a violation. *Id.* at 60. Although it employed the subject language in the definition of a violation of the VRRA, the Fifth Circuit did not utilize it in the formulation of a **remedy** for that violation. Thus, this court is not bound to find reinstatement mandated under § 2021(b)(3) "unless the employer's circumstances have so changed as to make it impossible or unreasonable" to rehire the plaintiff.[16] *See also Micalone v.*

---

**15.** Congress further specified that the person must have left a position other than a temporary one, received a certificate of satisfactory completion of military service and applied for reemployment within ninety (90) days after discharge from service or hospitalization continuing after discharge. 38 U.S.C. § 2021(a). Furthermore, the person must still be qualified for the position left or able to become qualified after reasonable efforts by the employer. *Id.* § 2021(a)(B)(i). If the person is unqualified for the former position due to a disability sustained during service, the employer must still offer to employ the person if the person is qualified for some position with the employer. *Id.* § 2021(a)(B)(ii).

**16.** The District Court for the Southern District of Mississippi discussed this matter when it was partly brought before the court in a summary judgment motion. *Barber v. Gulf Publishing Co.,* 1986 WL 611 (S.D.Miss. Jan. 8, 1986). The employer in that case denied the plaintiff's request for a leave of absence for military duty and subsequently terminated his employment when he took the leave without permission. According to the *Barber* Court, "[t]he only dispute [was] whether the applicable sections of the Act [2021(b)(3) and 2024(d)], allow the defenses asserted by Gulf Publishing." *Id.* *1. As one of its defenses, the employer asserted that it had previously filled the position vacated by the reservist. The district court noted that such an excuse would not exempt the employer from the application of the VRRA. *Id.* *9. That holding comports with this court's interpretation of the Fifth Circuit's reasoning in *Cole.* However, that court further stated that reinstatement would be mandated (if the case proceeded to trial) "even though it might be 'grossly unfair' ... to fire the new copy editor trained by the defendant or displace her to put the plaintiff back on." *Id.* It appears the district court found itself bound to order reinstatement "unless the employer's circumstances had so changed as to make it impossible or unreasonable to do so," without applying any other equitable considerations. For authority, the *Barber* Court cited *Green v. Oktibbeha County Hosp.,* 526 F.Supp. 49, 55 (N.D.Miss. 1981). The *Green* Court, however, addressed a violation of the VRRA under § 2024(c) which, as this court previously pointed out *supra,* specifically incorporates the "changed circumstances"

*Long Island R.R.,* 582 F.Supp. 973, 977–78 (S.D.N.Y.1983) ("[W]hile section 2021(a) is analogous to sections 2021(b)(3) and 2024, the provisions of 2021(a)(1) ensure the returning veteran reinstatement and do not apply to the reservist.").

■ As such, the court exercises its equitable discretion in determining whether or not Graham should be reinstated as an HMC employee. *See Tukesbrey v. Midwest Transit, Inc.,* 822 F.Supp. 1192, 1194 (W.D.Pa. 1993) ("Persons injured by a violation of the foregoing provisions [§§ 2021(b)(3), 2024(d)] may bring a private action for equitable remedies such as reinstatement and backpay."); *Mowdy v. Ada Board of Educ.,* 76 F.R.D. 436, 437 (E.D.Okla.1977) ("Actions brought under the [VRRA] have been held to be equitable in nature.... Whether the veteran's claim is for reinstatement and back pay, restitution of seniority rights or wage rate adjustments does not alter the basically equitable nature of the rights asserted."); *Ufland v. Buffalo Courier Express, Inc.,* 394 F.Supp. 199, 201 (W.D.N.Y.1974) (same).[17]

As the most comprehensive scheme involving reemployment and discrimination in the workplace has evolved under Title VII, the court implements reasoning analogous to such situations in the case sub judice. The decided preference under Fifth Circuit Title VII precedent is for the court to award reinstatement if feasible. *Weaver v. Amoco Prod. Co.,* 66 F.3d 85, 88 (5th Cir.1995) (interpreting ADEA); *Deloach v. Delchamps, Inc.,* 897 F.2d 815, 822 (5th Cir.1990). However, "if reinstatement is not feasible" the court may fashion an alternative appropriate remedy. *Deloach,* 897 F.2d at 822.

■ When making such a determination, the court is required to articulate its findings in regard to its decision of the infeasibility of

reinstatement. *Weaver,* 66 F.3d at 88–89. The Fifth Circuit has recognized several factors on which the court can rely in holding that reinstatement is not the appropriate remedy. One such factor is when there is "discord and antagonism between the parties." *Brunnemann v. Terra Int'l, Inc.,* 975 F.2d 175, 180 (5th Cir.1992). It is clear from the testimony heard and evidence produced at trial that antagonism permeates the relationship between the plaintiff and defendant. Due to the small size of the place of employment involved in this case, it is reasonably foreseeable that such animosity and antagonism would almost certainly disrupt the workplace. This factor alone indicates the inviability of reinstatement.

In remanding a case for a full development of the facts underlying the lower court's determination to award front pay in lieu of reinstatement, the Fifth Circuit stated:

> The court did not respond to [employer's] assertions that it considered [employee] a qualified and competent employee capable of resuming work at the company and that there was little evidence of ill will between [employee's] officials and [employee]. [Employer] never contended that [employee's] work was unacceptable. If the relationship between [employee] and [employer] has not in fact been irreparably damaged, reinstatement would be proper.

*Walther v. Lone Star Gas Co.,* 952 F.2d 119, 127 (5th Cir.1992). Evidence produced at trial indicates that not only is the relationship between plaintiff and defendant employer irreparably damaged, but also the relationships between plaintiff and most of defendant's other employees. Furthermore, HMC proved at trial that throughout Graham's employment, his work performance steadily decreased as his proclivity for caus-

---

language contained in § 2021(a)(1). This court disagrees with the *Barber* Court's holding insofar as its finding that § 2021(b)(3) mandates reinstatement "unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so," without regard to any other equitable considerations. That language simply is not contained in § 2021(b)(3).

**17.** Although some of the cases cited above fell under the VRRA's predecessor, the Military Se-

lective Service Act, § 9(d), 50 U.S.C.App. § 459(d), the reasoning remains valid. *Hansen v. Town of Irondequoit,* 896 F.Supp. 110, 114 n. 2 (W.D.N.Y.1995) ("The VRRA is substantially a reenactment of legislation that has been in effect since 1940. The reemployment provisions of the Act and its predecessors are 'substantially identical' and the judicial precedents developed under the various acts are 'largely interchangeable.' ") (citing *Hanna v. American Motors Corp.,* 724 F.2d 1300, 1306 n. 4 (7th Cir.1984)).

ing discord and difficulty increased. For all of the above reasons, the court finds that reinstatement is not a realistic alternative.

### 2. Loss of Wages

■ Section 2022 of the VRRA provides that, upon finding a violation of section 2021(b)(3) or 2024, the district court "shall have the power ... specifically to require [an] employer to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action." 38 U.S.C. § 2022. The court is of the opinion that Graham is entitled to an award for loss of wages. As such an award under the VRRA is also an equitable remedy, the court invokes again its discretion in determining the amount to be awarded. *Mowdy v. Ada Board of Educ.*, 76 F.R.D. 436, 439 (E.D.Okla.1977) ("The court is of the view that section 2022 of the [VRRA] ... is more closely analogous to the discretionary nature of the award of back pay under Title VII.").

■ Back pay is awarded so as to make a victim whole. *Gloria v. Valley Grain Prods.*, 72 F.3d 497, 499 (5th Cir.1996) (discussing goal of Title VII). Section 2022 of the VRRA authorizes this court "to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action." 38 U.S.C. § 2022. However, the wronged person has a duty to exercise reasonable diligence to mitigate his damages. The burden is on the defendant to prove failure to mitigate. *Ali v. City of Clearwater*, 915 F.Supp. 1231, 1242 (M.D.Fla. 1996).

> To meet its burden, the defendant must demonstrate: 1) there were suitable positions which the plaintiff could have discovered and for which he was qualified; and 2) the plaintiff failed to use reasonable diligence in seeking such positions.

*Ali*, 915 F.Supp. at 1242 (internal quotations omitted). The question to be answered is, "What amount could the employee have earned through the exercise of reasonable diligence?" *EEOC v. Exxon Shipping Co.*, 745 F.2d 967, 978 (5th Cir.1984).

Graham has requested an award of lost wages dating from February 4, 1992, his termination date, to the present. The court is unconvinced that an award of over four (4) years of lost wages is warranted in this case. The defendant presented evidence that machinist jobs of a type equivalent to the position Graham held at HMC have been plentiful in and around this area. Mr. McMillen and another General Manager of a tooling company both presented evidence that "You can always use a good machinist." Graham failed to dispute that. Graham presented no evidence that he had applied for other machinist jobs in his area and been rejected. In fact, the first tooling company he inquired of as to employment hired him as a machinist. Thus, the court is of the opinion that Graham is equitably entitled to recover lost wages for one year, not over four (4) years.

The evidence before the court shows that Graham was making $12.75 per hour at the time of his termination in February, 1992. However, the plaintiff also proved to the court's satisfaction that HMC granted a yearly cost of living increase to its employees, regardless of merit. That increase in 1992 would have raised Graham's wages to $13.26 per hour. Although HMC's policy at the time appeared to be encouragement of at least eighteen (18) hours of overtime, Graham worked an average of 1.81 hours overtime in 1990 and an average of 7.77 overtime hours in 1991. The court will credit Graham with an average of four (4) overtime hours for 1992. The total amount Graham would have earned at HMC from February 1992 through February 1993, at $13.26 per hour with an average of four hours overtime per week amounts to $30,498.00. Adding vacation to this amount equals $31,558.80 ($30,498 + 1060.80). Graham also provided proof that he earned $11,849.00 during 1992 after his termination from HMC. That leaves the total amount of lost wages for 1992 as $19,709.80.

■ This does not end the court's inquiry, though. The Fifth Circuit has stated before that "interest on any judgment is an element that 'should' be included in backpay." *Gloria v. Valley Grain Prods.*, 72 F.3d 497, 499 (5th Cir.1996) (citing cases). When discussing the lower court's decision to deny prejudgment interest based upon the em-

ployer's good faith attempt to comply with the VRRA, the appellate court noted that "a trial court does not have unbridled discretion to deny the award. In other contexts, we have recognized that 'the only way the wronged party can be made whole is to award him interest from the time he should have received the money.'" *Hembree v. Georgia Power Co.*, 637 F.2d 423, 430 (5th Cir. Unit B 1981) (citation omitted). *See also Green v. Oktibbeha County Hosp.*, 526 F.Supp. 49, 56 (N.D.Miss.1981). Thus, this court also awards interest on the amount found due, which is $19,709.80, at the rate of 6% per annum through the date this judgment is entered.

## CONCLUSION

This court is of the opinion that the defendant, Hall–McMillen Company, violated the Veterans' Reemployment Rights Act by forcing the plaintiff, Elmer "Mike" Graham to take vacation pay and time for his leave of absence due to military training. The court further finds that HMC violated the Act when it discharged Graham due to his protestations over the above practice. Graham is entitled to one year of lost wages, less his earnings for that year, which totals $19,-709.80, and interest on that amount through the date final judgment in this case is entered.